UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BRENDA BAILLARGEON,<br>Plaintiff,<br><br>v.<br><br>DRUG ENFORCEMENT ADMINISTRATION, XYZ CORPORATION, JOHN DOE I, JOHN DOE II, and JOHN DOE III,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | C.A. No.: 07-271S |

**PLAINTIFF BRENDA BAILLARGEON'S OPPOSITION TO DEFENDANT UNITED STATES DRUG ENFORCEMENT ADMINISTRATION'S MOTION TO DISMISS**[1]

## I. INTRODUCTION

Plaintiff Brenda Baillargeon ("Plaintiff") respectfully submits this memorandum of law in support of her Opposition to Defendant United States Drug Enforcement Administration's ("Defendant") Motion to Dismiss. Based upon the following, Plaintiff respectfully requests this Honorable Court Deny Defendant's Motion to Dismiss.

## II. BACKGROUND

On or about October 1, 2004, Forfeiture Support Associates ("FSA") hired Plaintiff as an asset forfeiture specialist. (Comp. ¶ 15). Plaintiff was assigned to work in the capacity of an asset forfeiture specialist for Defendant, at its Warwick, Rhode Island office, pursuant to a contract entered into between Defendant and FSA.

[1] Defendant has not moved to dismiss on behalf of any John Doe defendants who were alleged to be employees and/or agents of Defendant DEA. (Comp. ¶¶ 4, 5, 6). As such, all claims should minimally survive with respect to John Doe defendants and should this Honorable Court dismiss any of Plaintiff's claims against Defendant DEA, such claims should remain against John Doe defendants.

(Comp. ¶ 16). In order to perform her duties and maintain her employment, Plaintiff was required to obtain, and did obtain, a "DEA Sensitive" security clearance. (Comp. ¶¶ 17, 18).

On or about February 4, 2005, Defendants revoked Plaintiff's Security Clearance. (Comp. ¶ 19). Plaintiff was provided no notice as to the basis of the decision nor offered an opportunity to be heard regarding the merits of the revocation of her Security Clearance. (Comp. ¶ 20). As a result of Defendant's revocation of Plaintiff's security clearance, Plaintiff was unable to continue her employment in the capacity of an asset forfeiture specialist for Defendant, and therefore, was terminated from FSA. (Comp. ¶ 21). Plaintiff was not offered other comparable employment with FSA and was unable to procure other employment in the profession as an asset forfeiture specialist. (Comp. ¶ 21). As a result, Plaintiff has been unable to proceed in her chosen profession and is currently employed as a paralegal.[2]

## III. ARGUMENT

### A. Standard of Review

"When reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the well-pled facts must be taken as true and all reasonable inferences must be drawn in favor of the plaintiff." Alfieri v. Koelle, 2007 U.S. Dist. LEXIS 24003, 8-9 (D.R.I. 2007) (citing Figueroa v. Rivera, 147 F.3d 77 (1st Cir. 1998)). "A court should not grant a motion to dismiss unless 'it appears to a certainty that the plaintiff would be unable to recover under any set of facts.'" Id. (quoting Roma Constr. Co. v. A Russo, 96 F.3d 566, 569 (1st Cir. 1996)).

[2] This fact is plead in Plaintiff's First Amended Complaint at paragraph 22, filed contemporaneously with Plaintiff's Opposition to Motion to Dismiss.

With respect to deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court may look to evidence outside of the pleadings to determine whether jurisdiction exists. Lincoln-Dodge, Inc. v. Sullivan, 2007 U.S. Dist. LEXIS 94618 at *11 (D.R.I. 2007)

> The procedure for deciding the motion depends on whether the jurisdictional facts are intertwined with the merits of the plaintiff's claim. If the relevant facts, which would determine the court's jurisdiction, also implicate elements of the plaintiff's cause of action, a court should apply the standard applicable to a Rule 56 motion for summary judgment and should deny the motion if there is a genuine dispute with respect to a material jurisdictional fact. In most cases, however, where the jurisdictional facts are not intertwined with the merits of the plaintiff's claim, a court is free to weigh the evidence and make findings with respect to relevant to the (sic) jurisdictional facts without considering the merits of the claim.

Id. (citing Torres-Negrn v. J&N Records, LLC, 504 F.3d 151, at 163(1st Cir. 2007) (internal citations and quotations omitted).

**B. It is well settled that Federal Courts may review constitutional claims arising from a federal agency's security clearance revocation process rights and therefore should not be dismissed pursuant to Rule 12(b)(1).[3]**

**1. Pursuant to the Administrative Procedures Act, sovereign immunity does not bar Plaintiff's claims.**

"The Supreme Court and several courts of appeals have held the federal courts have jurisdiction to review constitutional claims arising from the [security] clearance revocation process." Stehney v. Perry, 101 F.3d 925, 932 (3d Cir. 1996); (citing Webster v. Doe, 486 U.S. 592, 603-04, (1988); Dorfmont v. Brown, 913 F.2d

[3] Plaintiff claimed a procedural due process violation in Count I of her Complaint against all defendants. However, in her First Amended Complaint filed contemporaneously with this Opposition, Plaintiff segregates her procedural due process claim into separate counts against Defendants DEA, Susan D. Ashcraft, and the John Doe Defendants.

1399, 1402 (9th Cir. 1990); Jamil v. Secretary, Dept. of Defense, 910 F.2d 1203, 1209 (4th Cir. 1990); Dubbs. v. C.I.A., 866 F.2d 1114, 1120 (9th Cir. 1989); National Fed'n of Fed. Employees v. Greenberg, 983 F.2d 286, 289-90 (D.C. Cir. 1993)); see also Ranger v. Tenet, 274 F. Supp. 2d 1, 7 (D.D.C. 2003) ("Although no one may hold a property interest in a security clearance, a federal agency's revocation of a security clearance may give rise to a due process claim for injury to a liberty interest in reputation") (internal citation omitted); Ryan v. Defense Indus. Sec. Clearance Office, 1991 U.S. Dist. LEXIS 21070 at * 4-5 (D. Conn. 1991) (holding that procedural due process claim was reviewable by the court because plaintiff was not challenging the substantive decision denying the issuance of a security clearance, but the unreasonable delay in rendering a decision).

Defendant has argued that the United States Drug Enforcement Administration[4] is immune from suit for constitutional torts by virtue of sovereign immunity. While "'it is long settled law that, as an attribute of sovereign immunity, the United States and its agencies may not be subject to judicial proceedings unless there has been an express waiver of that immunity,'" Puerto Rico v. U.S., 490 F.3d 50, 57 (1st Cir. 2007) (quoting EPA v. Gen. Elec. Co., 197 F.3d 592, 597 (2d Cir. 1999)) the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA"), is an express waiver of sovereign immunity and Plaintiff's claim arising from Defendant's

[4] Significantly, Defendant has only raised this argument with respect to the Defendant United States Drug Enforcement Administration. Plaintiff's Due Process claim was made against *all* Defendants, which include as yet unknown John Doe Defendants acting in their respective individual capacities and Defendant Susan Ashcraft, in her individual capacity, who is added as a Defendant in Plaintiff's First Amended Complaint.

failure to follow its own regulations and procedures falls squarely within the scope of the APA. Section 702 of the APA provides in pertinent part:

> A person suffering legal wrong because of agency action ... is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority *shall not be dismissed* nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.[5]

5 U.S.C. § 702 (emphasis added). "This waiver is for *all* equitable actions for specific relief against a Federal agency or officer acting in an official capacity, and thus applies to any suit whether under the APA or not. Puerto Rico v. United States, 490 F.3d at 57-58. (internal quotations and citations omitted).

Agency action is defined as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). The agency action at issue in this matter is Defendant's "failure to act," namely, failing to follow its own procedures or rules and/or failing to provide Plaintiff with notice and an opportunity to be heard. See Id. As such, the APA's express waiver of sovereign immunity is applicable to Plaintiff's claims and this Honorable Court should deny Defendant's Motion to Dismiss.

**2. Plaintiff is Entitled to Nonstatutory Review**

In addition to the APA's express waiver, "[w]hen a party claims that a violation of its constitutional rights has occurred and it has 'no effective means other

[5] Moreover, any argument by Defendant to dismiss this claim is premature as Plaintiff has been unable to obtain Defendant's regulations and procedures with respect to its security clearance revocation process despite Plaintiff's multiple requests under the Freedom of Information Act (attached hereto at Exhibit 1).

than the judiciary to enforce these rights, [that party] must be able to invoke the existing jurisdiction of the courts for the protection of [its] justiciable constitutional rights.'" Puerto Rico v. United States, 490 F.3d at 58. (quoting Davis v. Passman, 442 U.S. 228, 242, (1979)).

> In the context of agency action, parties occasionally invoke the principles of nonstatutory review. Nonstatutory review is available pursuant to the general federal question jurisdiction of the federal courts under 28 U.S.C. § 1331 in situations where Congress makes no specific choice of [the court in which judicial review is to occur] in the statute pursuant to which the agency action is taken, or in another statute applicable to it. The basic premise behind nonstatutory review is that, even after the passage of the APA, some residuum of power remains with the district court to review agency action that is *ultra vires*. Thus, if a plaintiff is unable to bring his case predicated on either a specific or a general statutory review provision, he may still be able to institute a non-statutory review action.

Puerto Rico v. United States, 490 F.3d at 59.

The First Circuit has held that nonstatutory review is available if: (1) "its absence would wholly deprive the party of a meaningful and adequate means of vindicating its ... rights;" and (2) "Congress must not have clearly intended to preclude review of the agency's particular determination." Id. (internal citations and quotations omitted).

In the instant matter, absent judicial review, Plaintiff will be wholly deprived of a meaningful and adequate means of vindicating her rights. See Id. Defendant failed to provide Plaintiff with notice and an opportunity to be heard with respect to the alleged findings which led to the revocation of her security clearance. As such, without judicial review of Plaintiff's claims and relief compelling Defendant to provide such an opportunity to be heard, Plaintiff will remain with no meaningful and adequate means of vindicating her rights. See Id.

Second, Congress has not clearly intended to preclude judicial review of Defendant's observance, or lack thereof, of its own rules and procedures or of its violations of Plaintiff's constitutional rights.

In fact, even 5 U.S.C., § 701(a) does not preclude judicial review of Plaintiff's claim:

> In *Webster v. Doe*, the Supreme Court held that even if a statute grants an agency absolute discretion precluding judicial review of the merits of agency decisions, the federal courts may still consider constitutional challenges arising from the exercise of discretion, at least absent clear congressional intent to preclude such review. The court noted that this heightened showing is required to avoid the serious constitutional question that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim. Since there is no statute expressly precluding judicial review of colorable constitutional claims arising from NSA's security clearance procedure, sovereign immunity does not preclude judicial review of Stehney's constitutional claims.

Stehny v. Perry, 101 F.3d 925, 934 (3d Cir. 1996) (quoting Webster v. Doe, 486 U.S. 592 (1988) (internal citations and quotations omitted)). In the instant matter, Plaintiff is not even seeking this Court's review of a discretionary act of Defendant. Rather, Plaintiff seeks review of Defendant's failure to act. Thus, since no statute exists expressly precluding judicial review of Plaintiff's colorable constitutional claims arising from Defendant's security clearance procedure, and as such, sovereign immunity does preclude judicial review of Plaintiff's constitutional claims.

**3. Sovereign Immunity Does Not Bar Claims Against Defendants in their Individual Capacities.**

Lastly, sovereign immunity does not bar damage suits against the unknown John Doe Defendants[6] or Defendant Susan Ashcraft in their individual capacities. Burgos v. Milton, 709 F.2d 1, 2-3 (1st Cir. 1983). Pursuant to Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971), it is will settled that Plaintiff may maintain an action against these agents of Defendant in their individual capacities.

**4. The Fifth Amendment of the United States Constitution provides a cause of action against Defendants.**

Defendant has alleged that Plaintiff has failed to plead a cognizable claim under 42 U.S.C. § 1983 because Defendant operates under the color of federal, not state, law. Plaintiff has corrected this inadvertent citation to 42 U.S.C. § 1983 in her First Amended Complaint filed with this Honorable Court contemporaneously with this Reply Memorandum, rendering Defendant's argument moot. (See Ex. Incorporated herein and made part hereof). Plaintiff's procedural due process claim is appropriate under the Fifth Amendment of the United States Constitution.

[6] Since Plaintiff was never provided notice and an opportunity to be heard regarded the purported findings of the investigation which led to the revocation of her security clearance, she remains unaware as to who was responsible for the decision. The information will presumably be ascertained through discovery and the Complaint thereafter amended appropriately.

**5. Plaintiff enjoys a property and liberty interest protected by procedural due process.**

In order to maintain a procedural due process claim, Plaintiff "must first point to a protected liberty or property interest." Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 7 (1st Cir. 2005) (citing Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972)). Defendant erroneously asserts that Plaintiff's procedural due process claim should fail because Plaintiff has no constitutionally protected interest in access to DEA sensitive materials. To be clear, Plaintiff is not claiming, nor has she ever claimed that she has a constitutionally protected interest in her security clearance; rather, Plaintiff maintains that she was vested with a property and/or liberty interest[7] in her continued employment with FSA and/or her right to follow her chosen profession,[8] and that she enjoyed a liberty interest in her good name and reputation. (Complaint ¶ 24-25).[9]

"The right to follow a chosen profession is a property interest protected by the Fifth and Fourteenth Amendments." Lange-Kessler v. Dept. of Edu., 1997 U.S. App. LEXIS 15275 (2d Cir. 1997) (citing Greene v. McElroy, 360 U.S. 474, 492 (1959) ("The right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the

[7] Plaintiff alleged in her Complaint, a property interest with respect to her continued employment with FSA. (Comp. ¶ 24). Plaintiff has added "and/or liberty interest" with respect to her continued employment with FSA in her First Amended Complaint filed contemporaneous to this Opposition at paragraph 26.

[8] Plaintiff has added the allegation that she was vested with a property and or liberty interest with respect to her right to follow her chosen profession in her First Amended Complaint filed contemporaneous to this Opposition.

[9] Defendant has not challenged in its Motion to Dismiss, Plaintiff's allegation that Defendant violated her procedural due process with respect to her liberty interest in her good name and reputation and, as such, Plaintiff need not address this issue and this Honorable Court should deny Defendant's Motion to Dismiss with respect to the same. See Kartseva v. Dept. of State, 37, F.3d 1524 (D.C. Cir. 1994).

"liberty" and "property" concepts of the Fifth Amendment"); see also Colaizzi v. Walker, 812 F.2d 304, 307 (7th Cir. 1987) ("If a state or the federal government formally banned a person from a whole category of employment, it would be infringing liberty of occupation--a component of the liberty that the due process clauses of the Fifth and Fourteenth Amendments protect, and recognized as such almost since the beginning of this nation").

In Cafeteria Workers & Restaurant Workers Union v. McElroy, the plaintiff was a cook employed by a private catering company and working on a military installation, which required a security clearance. 367 U.S. 886 (1961). The plaintiff's security clearance was revoked without a hearing and the Supreme Court held that the revocation did not violate the due process clause of the Fifth Amendment. The Court reasoned in part that the plaintiff had been offered but refused similar employment by the private catering company outside the military installation; thus, the plaintiff had been denied only "the right to work at one isolated and specific military installation," not elsewhere in the same profession. Id. at 896.

Similarly, in Kartseva v. Dept. of State, the Second Circuit remanded to the district court for a determination of whether the Department of State's disqualification for counterintelligence concerns of plaintiff, a Russian translator for government contracts, interferes with her "constitutionally protected 'right to follow a chosen trade or profession.'" 37 F.3d 1524, 1529 (D.C. Cir. 1994) (quoting Cafeteria Workers, 367 U.S. at 895-96). Interpreting the line of precedent under Cafeteria Workers, the Kartseva Court stated, "if [the plaintiff] can show that the [Department of] State's action precludes her from pursuing her profession as a

Russian language translator, she will have identified a cognizable liberty interest." 37 F.3d at 1529. "On the other hand, if [the plaintiff] has merely lost one position in her profession but is not foreclosed from reentering the field, she has not carried her burden in this line of cases." Id. (citing Greene v. McElroy, 360 U.S. 474, 492 (1959) "(revocation of a security clearance possibly implicates Fifth Amendment liberty interest where action 'has seriously affected, if not destroyed, [plaintiff's] ability to obtain employment in the aeronautics field')."

In the instant case, Defendant's revocation of Plaintiff's security clearance without a hearing completely precluded her from pursuing her chosen profession as an asset forfeiture specialist. See Kartseva, 37 F.3d at 1529. FSA did not and could not offer Plaintiff similar employment in any other location, and Plaintiff has been entirely foreclosed from reentering the asset forfeiture field. See Cafeteria Workers, 367 U.S. at 896; Kartseva, 37 F.3d at 1529. Plaintiff's chosen profession as an asset forfeiture specialist has been destroyed as a direct result of Defendant's actions. See Greene, 360 U.S. at 492.[10] As such, Plaintiff enjoyed a protected right to follow her chosen profession as an asset forfeiture specialist and this right has clearly been infringed upon. See Lange-Kessler, 1997 U.S. App. LEXIS 15275 (2d Cir. 1997).

Therefore, consistent with the Supreme Court and several Circuit Courts of Appeals, this Honorable court should hear and decide Plaintiff's procedural due process claim arising from Defendant's security clearance revocation procedure.

---

[10] As a result, Plaintiff was forced to entirely change her profession and is currently employed as a paralegal. (Amend. Comp. ¶ 22).

**C. Plaintiff's State law tort claims should not be dismissed as a matter of law.**

**1. This Honorable Court has subject matter jurisdiction over Plaintiff's claims and such claims should not be dismissed under Rule 12(b)(1).**

Defendant's arguments that this Honorable Court lacks subject matter jurisdiction over Plaintiff's tort claims are erroneous and/or moot.

Defendant's argument here is moot. Plaintiff named Defendant (the United States Drug Enforcement Administration), an agent of the United States, as a party and therefore, the United States was on notice of Plaintiff's claims and suffers no prejudice defending such claims against it. In fact, Defendant acknowledges in its Motion to Dismiss that "[a] suit against a federal agency is a suit against the United States." (Defendant's Motion to Dismiss at 5).

Second, Defendant's argument that its decision to revoke Plaintiff's security clearance falls within the discretionary function exception of 28 U.S.C. § 2680(a) is irrelevant to this Action and cannot be a basis to which Plaintiff's cause of action may be dismissed. The discretionary function exception immunizes the federal government from immunity under the FTCA and applies when the government's action "involves an element of judgment or choice" and if the "judgment is of the kind that the discretionary function exception was designed to shield." Dureiko v. United States, 209 F.3d 1345, 1351 (Fed. Cir. 2000). The determination of whether to revoke a security clearance falls under the discretionary function exception as it is one of "those determinations [] committed to the broad discretion of the responsible Executive Branch agency." Cheney v. DOJ, 479 F.3d 1343, 1351 (Fed. Cir. 2007).

Nevertheless, Plaintiff's tort claims arise from the procedure, or lack thereof, of Defendant's revocation of Plaintiff's security clearance; not from the substance of its decision. As such, Defendant's determination of whether to revoke Plaintiff's security clearance is of no consequence to Plaintiff's claims and this Honorable Court should not dismiss Plaintiff's tort claims under this irrelevant theory.[11] See Id.

**2. All State law tort claims are sufficiently plead as a matter of law and should not be dismissed pursuant to Rule 12(b)(6).**[12]

An examination of Plaintiff's Complaint reveals that Plaintiff has, in fact, adequately pleaded all her State law tort claims. Similar to the Federal Rules of Civil Procedure, "under Rule 8(a) of the Superior Court Rules of Civil Procedure, a claim for relief need be only '(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he or she deems himself entitled.' The plaintiff is not required to plead the ultimate facts that must be proven in order to succeed on the complaint. The plaintiff is also not obligated to set out the precise legal theory upon which his or her claim is based. All that is required is that the complaint give the opposing party fair and adequate notice of the type of claim being asserted." Haley v. Lincoln, 611 A.2d 845, 848 (R.I. 1992) (citing Friedenthal, Kane, and Miller, Civil Procedure §§ 5.7 and 5.8 at 252-56 (West 1985); 1 Kent, R.I. Civ. Prac. § 8.2 at 83-84). This general notice pleading standard has been adopted by Rhode Island because "cases in [the

[11] With respect to Defendant's argument that the FTCA's intentional tort exception excludes tortious interference with contractual relations from the waiver of sovereign immunity; Plaintiff has clarified this Count in her First Amended Complaint to apply exclusively against Defendant Susan D. Ashcraft and the John Doe defendants, not against Defendant DEA.

Rhode Island] system are not to be disposed of summarily on arcane or technical grounds." Id. (citing Wright & Miller, Federal Practice and Procedure: Civil 2d § 1261 at 383-84). Pursuant to this standard, Defendants' Rule 12(b)(6) challenge to each count of Plaintiff's complaint must be denied.

**a. Count II – Intentional Infliction of Emotional Distress.**

In order to state a claim for intentional infliction of emotional distress under Rhode Island law, a plaintiff must allege that the defendant has engaged in "extreme and outrageous conduct that intentionally or recklessly resulted in causing [plaintiff] severe emotional distress." Vallinoto v. DiSandro, 688 A.2d 830, 838 (R.I. 1997). "In Rhode Island, a plaintiff must also [allege] physical symptomatology." Id.

In the instant case, Plaintiff has alleged that: (1) Defendants engaged in extreme and outrageous conduct by intentionally and/or recklessly revoking Plaintiff's security clearance thereby suddenly dismissing her from her livelihood and harming her future employment, health and reputation without notice and without an opportunity to rebut the allegations against her (Complaint ¶ 35-37); (2) the nature of Defendants' conduct was particularly extreme and outrageous (Complaint ¶ 38); (3) the extreme and outrageous acts of Defendants caused severe emotional distress to Plaintiff (Complaint ¶ 39); and (4) Plaintiff suffered physical and emotional damage (Complaint ¶ 39).

Plaintiff, by setting forth these facts and allegations in her Complaint, has provided Defendants with fair and adequate notice of the type of claim being

asserted. Therefore, Defendants' Rule 12(b)(6) challenge to Count II must be denied.

**b. Count III – Negligent Infliction of Emotional Distress.**

In order to state a claim for negligent infliction of emotional distress under Rhode Island Law, a plaintiff must allege that the defendant has engaged in "extreme and outrageous conduct that . . . recklessly resulted in causing [plaintiff] severe emotional distress." Vallinoto, 688 A.2d at 838. "In Rhode Island, a plaintiff must [also allege] physical symptomatology." Id.

In the instant case, Plaintiff has alleged that: (1) Defendants engaged in extreme and outrageous conduct by negligently revoking Plaintiff's security clearance thereby suddenly dismissing her from her livelihood and harming her future employment, health and reputation without notice and without an opportunity to rebut the allegations against her (Complaint ¶ 42-43); (2) the nature of Defendants' conduct was particularly extreme and outrageous (Complaint ¶ 38, 42); (3) Defendants' conduct caused severe emotional distress to Plaintiff (Complaint ¶ 44); and (4) Plaintiff suffered physical and emotional damage (Complaint ¶ 44).

Plaintiff, by setting forth these facts allegations in her Complaint, has provided Defendants with fair and adequate notice of the type of claim being asserted. Therefore, Defendants' Rule 12(b)(6) challenge to Count III must be denied.

**c. Count IV – Tortious Interference with Contractual Relations.**

To establish a prima facie case of tortious interference with contractual relations under Rhode Island law, the [plaintiff] must show '(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his [or her] intentional interference; and (4) damages resulting therefrom.'" Belliveau Bldg. Corp. v. O'Coin, 763 A.2d 622, 627 (R.I. 2000). Once the plaintiff demonstrates the prima facie elements, "[t]he burden of proving sufficient justification for the interference shifts to the defendant." Id. (quoting Smith Development Corp. v. Bilow Enterprises, 308 A.2d 477, 482 (R.I. 1973)).

Here, the face of Plaintiff's Complaint reveals that the broad scope of Rule 8(a) has not been offended. The Plaintiff alleges that: (1) she enjoyed a contractual relationship with FSA (Complaint ¶ 48); (2) Defendants knew of the existence of that contract (Complaint ¶ 49); (3) Defendants revoked Plaintiff's security clearance (Complaint ¶ 50); and (4) the revocation of Plaintiff's security clearance caused Plaintiff to lose her livelihood with FSA (Complaint ¶ 50).[13]

By setting forth these facts and allegations it is clear that Defendants have fair and adequate notice of the type of claim being asserted, that is, tortuous

[13] Additionally, Plaintiff has added in paragraph 72 to in her First Amended Complaint

interference with a contractual relationship. Therefore, Defendants' Rule 12(b)(6) challenge to Count IV must be denied.

## IV. CONCLUSION

Based upon the foregoing analysis, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion to Dismiss Plaintiff's Complaint.

Respectfully submitted,
Plaintiff,
By Her Attorneys,

/s/ Jeffrey D. Sowa
Jeffrey D. Sowa, Esquire #5764
Michael J. Jacobs, Esquire #7480
**LaPlante Sowa Goldman**
West Exchange Center
67 Cedar Street
Providence, RI 02903
(401) 273-0200 (telephone)
(401) 273-0250 (facsimile)

**CERTIFICATION**

I hereby certify that on this 11th day of February 2008, I electronically filed the within Memorandum in Opposition to Defendant's Motion to Dismiss, with the Clerk of the United States District Court for the District of Rhode Island, using the CM/ECF system. The following participants have received notice electronically:

Richard B. Myrus, Esquire
Assistant US Attorney
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

/s/ Jeffrey D. Sowa, Esquire