IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BRENDA BAILLARGEON, Plaintiff | ) | |
| | ) | |
| v. | ) | C.A. 07-271S |
| | ) | |
| DRUG ENFORCEMENT ADMINISTRATION, SUSAN ASHCRAFT, THE UNITED STATES OF AMERICA, JOHN DOE II, and JOHN DOE III, Defendants | ) | |

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM**

Defendants the United States Drug Enforcement Administration, Susan D. Ashcraft and the United States, by and through their counsel, Robert Clark Corrente, United States Attorney for the District of Rhode Island, and Richard Myrus, Assistant U.S. Attorney, move for dismissal of all Counts of the Complaint. The bases for defendants' motion are detailed in the accompanying memorandum of law filed herewith.

Respectfully submitted,

UNITED STATES DRUG
ENFORCEMENT ADMINISTRATION, ET AL.

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Richard B. Myrus
RICHARD B . MYRUS
Assistant U.S. Attorney
Fleet Center
50 Kennedy Plaza, 8th FL
Providence, RI 02903
(401) 709-5000
(401) 709-5017 (fax)
Email: richard.myrus@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of April, 2008, I electronically filed the within Defendant's Motion to Dismiss and supporting memorandum with the Clerk of the United States District Court for the District of Rhode Island using the CM/ECF System. The following participants have received notice electronically:

Jeffrey D. Sowa, Esq.
Michael J. Jacobs, Esq.
LaPlante Sowa Goldman
67 Cedar Street
Providence, RI 02903

/s/ Richard B. Myrus
RICHARD B. MYRUS
Assistant U.S. Attorney

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BRENDA BAILLARGEON,<br>Plaintiff<br><br>v.<br><br>DRUG ENFORCEMENT ADMINISTRATION,<br>SUSAN ASHCRAFT, THE UNITED STATES OF<br>AMERICA, JOHN DOE II, and JOHN DOE III,<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. 07-271S |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM**

## I. INTRODUCTION

Plaintiff Brenda Baillargeon is a former employee of the government contractor Forfeiture Support Associates ("FSA"), whom FSA assigned to the United States Drug Enforcement Administration's Providence, Rhode Island office as a records examiner/analyst. Plaintiff was not an employee of the DEA and did not hold a national security clearance. Pursuant to the terms of the contract between the Drug Enforcement Administration ("DEA") and FSA, the DEA removed plaintiff from her position at the DEA because of improprieties involving her time and attendance reporting. As a consequence, plaintiff lost her access to DEA sensitive materials.

Although the DEA acted pursuant to the terms of the FSA contract, and plaintiff had neither an entitlement to continued employment nor a constitutional right to access DEA sensitive materials, plaintiff alleges that the DEA and Susan Ashcraft, a DEA official, deprived her of procedural due process and violated the Administrative Procedure Act ("APA"). Plaintiff seeks monetary damages and equitable relief for those claims. In addition, plaintiff accuses the DEA and Ashcraft, as well as the United States and two John Doe defendants, of intentional and

negligent infliction of emotional distress. Last, plaintiff alleges that Ashcraft tortuously interfered with her contractual relations.

Plaintiff's claims fail for a number of reasons. First, plaintiff's procedural due process claim against the DEA (Count I) is jurisdictionally defective. Neither the United States nor its agencies has waived sovereign immunity for constitutional tort claims seeking damages. Plaintiff's due process claim against the DEA also fails as a matter of law because plaintiff has no constitutionally cognizable property or liberty interest in access to sensitive DEA materials, her assignment to the DEA's Providence office, or her job with FSA.

Second, Count II, which appears to allege an APA violation, is defective because the APA's waiver of sovereign immunity extends only to equitable relief and does not include money damages. Moreover, although plaintiff alleges that the DEA did not follow its procedures regarding the handling of her DEA "clearance," plaintiff fails to identify any statue, regulation, order, directive, policy, or other guidance that the DEA allegedly transgressed or that would provide a basis for the Court to review the DEA's actions. Plaintiff ignores that the DEA properly removed her under the terms of the FSA contract and that her access to sensitive DEA materials terminated as a result of her removal.

Third, plaintiff's state-law tort claims against the United States and the DEA (Counts V and VI) fail on jurisdictional grounds because the only possible basis for these causes of action is the Federal Tort Claims Act ("FTCA"). However, plaintiff's removal from her position with the DEA and the resulting expiration of her access to DEA materials fell within the discretionary function exception to the FTCA's waiver of sovereign immunity. Therefore, the Court lacks subject matter jurisdiction over these claims.

Fourth, plaintiff's state-law tort allegations against the government also fail to state a

claim under Federal Rule 12(b)(6). With respect to Count V – intentional infliction of emotional distress – plaintiff has alleged no facts to support her conclusory allegation that the DEA's actions regarding her "clearance" were extreme and outrageous as Rhode Island law requires. With respect to Count VI – negligent infliction of emotional distress – plaintiff cannot prevail because she alleges neither that she was physically endangered by the DEA's actions nor that she suffered emotional harm as a consequence of witnessing the wrongful infliction of injury upon a third party.

Fifth, as to defendant Ashcraft, plaintiff's claims are flawed because Ashcraft is not subject to personal jurisdiction in this forum. In addition, Plaintiff's Bivens claim (Count III) and APA claim (Count IV) against Ashcraft fail to state a claim under Rule 12(b)(6) for the same reasons that plaintiff's Bivens claim and APA claim against the DEA are deficient. Last, Plaintiff's state-law tort claims against Ashcraft must be dismissed because the United States has certified that Ashcraft was acting within the scope of her employment at the time of the actions alleged in the Amended Complaint.

## II. FACTUAL BACKGROUND

FSA is a contractor that provides support services to the United States Department of Justice ("DOJ") and its agencies in connection with DOJ's Asset Forfeiture Program. (See Contract DJJ-04-C-0980, attached as Ex. 1 to the Declaration of Susan D. Ashcraft ("Ashcraft Decl.") dated Apr. 3, 2008; Ashcraft Decl. ¶ 3). Contract DJJ-04-C-0980 ("FSA Contract"), governs the services furnished by FSA and expressly provides:

> The Government reserves the right to require the Contractor to reassign from this contract any Contractor employee(s) who is deemed incompetent, careless, unsuitable or otherwise objectionable, or whose continued use under the contract is deemed contrary to the best interests of the Government.

(Ex. 1, at § C.1.5.3).

The contract also provides that work to be performed under the contract will involve access to sensitive, but unclassified, materials, such as Grand Jury information, informant and witness information, investigative files, and tax data. (Id. at § H.18(a)(1)). The contract sets forth clearance requirements for FSA personnel who will have access to DEA sensitive materials. (Id.)

On October 1, 2004, FSA hired plaintiff to fill a position in the DEA's Providence Resident Office.[1] (Compl., ¶ 15.) Plaintiff was not an employee of the DEA. (Ashcraft Decl.¶ 4).

On February 4, 2005, Susan Ashcraft, Chief of the Operations Management Division of the DEA's Asset Forfeiture Section, informed FSA that the DEA had concerns about plaintiff's time and attendance reporting, and, pursuant to the FSA Contract, Ashcraft requested that FSA remove plaintiff from her position in the DEA's office. (Letter from Ashcraft to Ferrel dated Feb. 4, 2005, attached as Ex. 2 to Ashcraft Decl.; Ashcraft Decl.¶ 7). Because plaintiff was to be removed from her contract position, the DEA also advised FSA that plaintiff's access to DEA sensitive materials and the DEA facility would be revoked. (Ex. 2; Ashcraft Decl.¶ 7).

---

[1] In reciting plaintiff's allegations, the defendants in no way concede their veracity. In addition, matters outside the pleadings can be presented to, and considered by, the court in ruling on a motion to dismiss for lack of subject matter jurisdiction. See Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002); Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 37 (1st Cir. 2000). Even if this were solely a motion to dismiss for failure to state a claim, the Court could consider the documents cited herein without converting the instant motion to a motion for summary judgment. "[D]ocuments the authenticity of which are not disputed by the parties; . . . official records; . . . documents central to plaintiffs' claim; or . . . documents sufficiently referred to in the complaint," are not matters outside of the pleadings such as to require conversion of a motion into a summary judgment motion. Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (emphasis added)).

On January 31, 2007, plaintiff submitted an administrative claim to the DEA challenging the revocation of her "clearance," and the DEA denied this claim on April 2, 2007. (Amended Compl. ¶¶ 8-9). The plaintiff subsequently filed her Complaint in the instant action, naming only the Drug Enforcement Administration, XYZ Corporation, and three John Doe defendants. In response to the DEA's motion to dismiss, plaintiff filed her First Amended Complaint and added the United States and Ashcraft as defendants.[2]

## III. ARGUMENT

### A. Motion To Dismiss Standard

The defendants move to dismiss plaintiff's claims based on lack of subject matter jurisdiction and plaintiff's failure to state a claim. In addition, Ashcraft moves to dismiss the claims against her because she is not subject to personal jurisdiction in this forum and, as to the state-law tort claims, because she was acting within the scope of her employment.

Once subject matter jurisdiction has been challenged, it is the plaintiff's burden to establish, by competent proof, that jurisdiction in fact exists. Pejepscot Indus. Park, Inc. v. Maine Cent. R.R. Co., 215 F.3d 195, 200 (1st Cir. 2000); Bank One Texas, N.A. v. Montle, 964 F.2d 48, 50 (1st Cir. 1992). "No presumption of truthfulness attaches to the [plaintiff's] allegations [of jurisdiction]." Media Duplication Servs. Ltd. v. HDG Software, Inc., 928 F.2d 1228, 1235 (1st Cir. 1991). Moreover, matters outside the pleadings can be presented and considered by the court in ruling upon a motion to dismiss for lack of subject matter jurisdiction. Gonzalez, 284 F.3d at 288; Dynamic Image, 221 F.3d at 37.

[2] At the time plaintiff filed her Amended Complaint, plaintiff also filed an objection to the DEA's Motion to Dismiss. Plaintiff's filing of her Amended Complaint renders moot the DEA's pending Motion to Dismiss.

In addition, the defendants move to dismiss all Counts of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The standard by which a court determines whether to grant a Rule 12(b)(6) motion is well-established. In determining whether the plaintiff can survive a Rule 12(b)(6) motion, a court must accept as true all "well-pleaded" factual allegations in the complaint. Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996). The court, however, may "eschew any reliance on bald assertions, unsupportable conclusions and opprobrious epithets." Chongris v. Board of Appeals of Town of Andover, 811 F.2d 36, 37 (1st Cir. 1987) (internal quotations omitted).

### B. Plaintiff's Claims Against the Government Are Jurisdictionally and Substantively Flawed.

The jurisdictional bases of plaintiff's claims are ambiguous, but plaintiff appears to assert that the DEA denied her procedural due process (Count I) and violated the APA (Count II). In addition, she accuses the DEA and the United States, as well as the other defendants, of intentional and negligent infliction of emotional distress. (Counts V and VI.) As discussed below, each of these claims is defective.

#### 1. Plaintiff's Due Process Claim Against the DEA Should Be Dismissed.

##### a. The DEA Is Immune from Suit in an Action Seeking Damages for a Constitutional Violation.

"The United States, as sovereign, is immune from suit save as its consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Mitchell, 445 U.S. 535, 538 (1980) (internal quotations omitted). The shield of sovereign immunity protects not only the United States but also its agencies. FDIC v.

Meyer, 510 U.S. 471, 475 (1994); Tapia-Tapia v. Potter, 322 F.3d 742, 745-46 (1st Cir. 2003).

In Count I, plaintiff alleges that she was denied procedural due process when the DEA purportedly terminated her "clearance." (Amended Compl., ¶ 32.) Plaintiff seeks monetary damages and an injunction requiring that the DEA conduct a hearing regarding the termination of her "clearance." (Id. at ¶¶ 35-36.) Sovereign immunity, however, shields the federal government and its agencies from suit for damages absent a waiver. FDIC, 510 U.S. at 485. Here, plaintiff has identified no such waiver, and the Court lacks subject matter jurisdiction over plaintiff's direct action for damages against the DEA. Put differently, Count I for monetary damages amounts to a Bivens claim against the United States, but such claims against the United States are barred by sovereign immunity. Ruiz-Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000); Oladipupo v. Austin, 104 F. Supp.2d 623, 625 (W.D. La. 2000) (citing cases).

In addition to monetary damages, courts have concluded that "[s]overeign immunity also bars Bivens actions against the United States or its agencies for declaratory and injunctive relief." Morales v. White, 2007 WL 2426760, at *3 (W.D. Tenn. Aug. 22, 2007); see Wolverton v. United States, 1997 WL 85153, at *4 (6th Cir. Feb. 26, 1997) (injunctive relief for constitutional claim barred by sovereign immunity); Briggs v. United States Marshals Service, 2007 WL 1174261, at *2 n.4 (W.D. Tenn. April 19, 2007); see also United States v. Rural Elec. Convenience Coop. Co., 922 F.2d 429, 434 (7th Cir. 1991) ("coercive injunctive relief" barred). Sovereign immunity's "jurisdictional bar operates when a suit threatens to impose upon the United States liability for money or property damages or some form of coercive injunctive relief." Rural Elec., 922 F.2d at 434 (emphasis added). Here, plaintiff does not seek prospective relief to prevent the DEA from infringing her federal rights in the future, but instead

demands that the Court order the DEA to conduct a hearing into the termination of her access to DEA sensitive materials, in addition to seeking compensatory and punitive damages. Plaintiff cannot salvage her Bivens claim by seeking this injunctive relief, and Count I should be dismissed for lack of subject matter jurisdiction.

**b. Plaintiff Has No Constitutionally Protected Interest, and Therefore No Due process Claim.**

Even if the Court were to exercise subject matter jurisdiction, Count I fails as a matter of law under Rule 12(b)(6). Although plaintiff attempts to invoke due process, the requirements of due process do not apply here because plaintiff cannot make the requisite showing that she has a cognizable liberty or property interest. See Board of Regents v. Roth, 408 U.S. 564, 571 (1972). The protection of procedural due process extends only to established and recognized property or liberty interests. Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 7 (1st Cir. 2005) ("To the extent they hope to maintain a procedural due process claim, they must first point to a protected liberty or property interest."); Setliff v. Memorial Hosp. of Sheridan County, 850 F.2d 1384, 1394 (10th Cir. 1988) (citing Board of Regents v. Roth, 408 U.S. 564, 569 (1972)). Due process guarantees do not apply to all deprivations, and not every determination to withdraw a privilege requires notice and a hearing. Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 894-95 (1961).

The exact nature of plaintiff's claim in Count I is unclear. Plaintiff appears to contend that the DEA deprived her of procedural due process by revoking her access to sensitive information;[3] that because access to sensitive material was a condition of her continued

[3] Plaintiff had access only to sensitive, unclassified, DEA information. She did not possess a national security clearance for access to classified information. (See Amended Compl., ¶ 17; Ex. 1, at § H.18(a)(1)).

employment, such revocation resulted in the termination of her employment with FSA; and that she had a property and liberty interest in that employment. (Amended Compl., ¶¶ 25-31). As plaintiff has acknowledged, however, she has no property right or liberty interest in her "clearance" to access DEA sensitive information.[4] "Whatever expectation an individual might have in a clearance is unilateral at best, and thus cannot be the basis for a constitutional right." Hill v. Department of the Air Force, 844 F.2d 1407, 1411 (10th Cir. 1988). Therefore, to the extent that plaintiff's property and liberty interest claims are premised on her access to DEA sensitive materials, these claims must fail. See Dorfmont v. Brown, 913 F.2d 1399, 1403 (9th Cir. 1990) ("[t]here is . . . no protected property interest in the clearance or in a job requiring such a clearance.")

**i. Plaintiff Has No Protected Property Interest in Her Employment.**

Not only is there no constitutional right stemming from plaintiff's "clearance" to access DEA sensitive materials, but plaintiff has no independent constitutional claim arising from the loss of her FSA job. See Cafeteria and Restaurant Workers Union, 367 U.S. at 896 (Supreme Court "has consistently recognized that . . . the interest of a government employee in retaining his job[] can be summarily denied."); Singleton v. Cecil, 176 F.3d 419, (8th Cir. 1999) (Supreme Court has repeatedly asserted that "an employee can be discharged for no reason, a bad reason, or a false reason without a hearing, and that an employee has no right to a hearing in the absence of a property right to his job or unless his employer publicly divulged a stigmatizing reason for the dismissal."). To establish a constitutionally protected property interest in employment, a

[4] See Pl.'s Objection to Defendant's [First] Motion to Dismiss (Dckt. No. 11) at 9 ("Plaintiff is not claiming, nor has she ever claimed that she has a constitutionally protected interest in her security clearance.").

plaintiff must demonstrate that she has a legally-recognized expectation that she will retain her position. Marrero-Gutierrez v. Molina, 491 F.3d 1, 8 (1st Cir. 2007). A legitimate expectation of continued employment may derive from a statute, a contract, or an officially sanctioned rule of the workplace. Id. Plaintiff, however, was not a federal employee and was not a tenured employee of FSA. Predictably absent from the Amended Complaint is any allegation that plaintiff had an entitlement to continued employment with FSA or that she was anything other than an at-will employee. Accordingly, plaintiff cannot assert a procedural due process violation with respect to her termination by FSA. See Maymi v. Puerto Rico Ports Auth., 515 F.3d 20, 29-30 (1st Cir. 2008); Coyne v. City of Somerville, 972 F.2d 440, 443 (1st Cir. 1992) ("We do not reach the question of whether Coyne received 'due process' since he has failed to allege facts sufficient to state a property interest in the promotions."); Montalvo-Padilla v. University of P.R., 492 F. Supp. 2d 36, 41 (D.P.R. 2007) ("merely alleging that [plaintiff] held a position of counselor does not implicitly establish a protected property interest over her employment"); Macera v. Rhode Island Resource Recovery Corp., 2004 WL 2821647, at *4-5 (R.I. Super. Nov. 12, 2004) (at-will employees do not have property interest in continued employment).

**ii. Plaintiff Was Not Deprived of Her Occupational Liberty Interest.**

Plaintiff also contends that she has a protected liberty interest in her ability to practice in her chosen profession and that she was deprived of this interest without procedural due process. (Amended Compl., ¶ 26.) For plaintiff to make a tenable liberty deprivation claim, she must, at a minimum, show that she was denied the ability to pursue work in her chosen field and that her dismissal was accompanied by the publication of information that was false and stigmatizing. See United States Information Agency v. Krc, 905 F.2d 389, 397 (D.C. Cir. 1990); Beattie v.

United States, 759 F. Supp. 753, 760-61 (D. Kan. 1991) ("A liberty interest is not impinged unless the false and stigmatizing information is made public by the government entity itself."). Thus, plaintiff's claim fails for at least two reasons. First, she does not allege that she has been denied the right to earn a living, and she does not allege that the DEA has barred her from obtaining government-related employment in the future. Moreover, plaintiff states that she is currently employed as a paralegal, and she does not assert that she is in anyway precluded from handling matters in the asset forfeiture field. (Amended Compl., ¶ 22.) Second, plaintiff does not allege that the DEA made any public, stigmatizing disclosure of the reasons for her removal from the FSA Contract. See Roth, 408 U.S. at 573 (liberty interest implicated only if government imposed stigma that foreclosed individual from obtaining other employment). Therefore, plaintiff's procedural due process claim should be dismissed.[5]

**2. Plaintiff's APA Claim Against the DEA Should Be Dismissed.**

In Count II of her First Amended Complaint, plaintiff rehashes the allegations in Claim I and appears to assert that the DEA has violated the APA by failing to follow DEA regulations. Plaintiff seeks compensatory damages, punitive damages, and equitable relief for this alleged violation. (Amended Compl. ¶¶ 41-42.) Count II is flawed for two reasons.

First, the APA provides only a limited waiver of sovereign immunity. It does not waive the United States' immunity from money damage awards. The APA provides:

> A person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief

[5] Plaintiff also claims that she possessed a liberty interest in her "good name and reputation," but she fails to allege that the defendants took any actions that deprived her of any such interest. (Amended Compl. ¶ 27.)

> other than money damages and stating a claim that an agency or officer or an employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein denied on the ground that it is against the United States or the United States is an indispensable party.

5 U.S.C. § 702 (emphasis added). Therefore, plaintiff's APA claim for damages should be dismissed.

Second, section 706(2)(A) of the APA provides, inter alia, that a court may set aside agency action that is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Plaintiff alleges that the "DEA failed to follow any of its regulations and/or procedures with respect to the revocation of Plaintiff's DEA Sensitive security clearance," but plaintiff fails to identify the "regulations and/or procedures" that she relies upon. (Amended Compl., ¶¶ 38-39.) Simply put, plaintiff has not identified any law or meaningful agency standard for the Court to apply. If no "judicially manageable standards" are available, however, it is impossible for a court to evaluate the agency's action. See Heckler v. Chaney, 470 U.S. 821, 830 (1985). Of course, plaintiff's inability to cite any pertinent statute, regulation, or policy is not surprising given that the DEA's actions regarding FSA employees, such as plaintiff, are governed by the FSA Contract. (See Ex. 1.) In any event, plaintiff has not alleged a factual predicate for Count II that would justify "dragging [defendant] past the pleading threshold."[6] DM Research Inc. v. College of American Pathologists, 170 F.3d 53, 55 (1st Cir. 1999).

---

[6] Nor can plaintiff maintain a procedural due process claim based on alleged violations of unidentified DEA regulations or procedures that purportedly govern the revocation of a contract employee's access to DEA sensitive materials. Even if such procedures existed, any such procedures would "provid[e] no independent source of procedural or substantive protections." Webster v. Doe, 486 U.S. 592, 602 n.7 (1988). Put differently, the DEA's alleged failure to adhere to its procedures would not establish a property or liberty interest on which a due process claim could be based. Indeed, plaintiff has already conceded that she has no cognizable due process interest in her access to sensitive DEA materials. (See supra footnote 4.)

Therefore, Count II should be dismissed.

### 3. Plaintiff's State-Law Tort Claims Against the Government Should Be Dismissed.

#### a. The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Tort Claims.

The Federal Tort Claims Act ("FTCA") waives the sovereign immunity of the United States with respect to certain tort claims, see 28 U.S.C. § 1346(b) et seq., and provides the exclusive remedy to compensate for a federal employee's tortious acts committed within his or her scope of employment. See 28 U.S.C. § 2679. Although the FTCA waives sovereign immunity from certain torts, it also contains exceptions to this waiver. Specifically, the FTCA excludes from the waiver of sovereign immunity claims based on "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Here, the Court lacks subject matter jurisdiction over plaintiff's common-law tort claims against the United States and the DEA because the termination of plaintiff's access to sensitive DEA materials was the result of her removal under the FSA Contract and fell within the discretionary function exception to the Federal Tort Claims Act's waiver of sovereign immunity.[7]

---

[7] The FTCA requires that the named defendant in an FTCA action be the United States and not a federal agency. 28 U.S.C. §§ 1346(b), 2674, 2679(a). This requirement is jurisdictional in nature and is not waivable. See Roman v. Townsend, 224 F.3d 24, 27-28 (1st Cir. 2000); Allgeier v. U.S., 909 F.2d 869, 871 (6th Cir. 1990); Barros-Villahermosa v. United States, 2007 WL 4149805, at *4 (D.P.R. Nov. 19, 2007) ("defendants are correct that the United States is the only allowable party defendant under the FTCA"); Amtrak v. URS Corp., 2007 WL 1740276, at * 4 (E.D.Pa. June 14, 2007) (United States is only proper defendant in FTCA action) . Therefore, the plaintiff's FTCA claims against the DEA must be dismissed.

Courts apply a two-pronged test to determine the applicability of the discretionary function exception. First, a court must consider whether the conduct in question is a matter of choice for the acting employee. Second, the court must determine whether the employee's judgment is the type that the discretionary function is designed to shield. Berkovitz v. United States, 486 U.S. 531, 537 (1988). In undertaking this evaluation, the Supreme Court has urged courts to bear in mind that the discretionary function exception was intended to prevent second-guessing of legislative and administrative decisions grounded in social, economic, and political policy. Id.

Congress has granted to executive agencies, including the Department of Justice, the discretion to prescribe reasonable rules and regulations governing the procurement of goods and services on behalf of the federal government. See e.g. 41 U.S.C. §§ 403, 404. In order to maintain consistency in federal government procurement practices, the administrator of the Office of Procurement Policy promulgated the Federal Acquisition Regulations, 48 C.F.R. § 1.000 et seq. ("FARs"), which outline policies for the acquisition of goods and services. The regulations reserve broad authority for procurement officials to make decisions based on their "discretion and sound professional judgment." Id. §1.102-2(c)(3). The regulations further provide that agency contracting officers may be delegated the authority to enter into and terminate contracts. Id. § 1.602-1.

Consistent with this framework, the DOJ entered into the FSA Contract pursuant to which FSA provides services in support of DOJ's Asset Forfeiture Program. The FSA Contract describes the public-policy significance of the Asset Forfeiture Program:

> The Department of Justice's Asset Forfeiture Program is a nationwide law enforcement program that has proven to be an effective and powerful strategy

> in the fight against crime. The primary mission of the Asset Forfeiture Program is to employ asset forfeiture powers in a manner that enhances public safety and security. This is accomplished by removing the proceeds of crime and other assets relied upon by criminals and their associates to perpetuate their criminal activity against society.

(Ex. 1, at § C.1.2(b)).

As to the first prong of the discretionary function exception, the DEA's actions regarding plaintiff were the result of a discretionary employment determination that the DEA made pursuant to the FSA Contract. (Ashcraft Decl. ¶ 5-6). The FSA Contract expressly provides, among other things, that the DEA is entitled to request that FSA remove any contract worker "whose continued use under the contract is deemed contrary to the best interests of the Government." (Ex. 1, at §C.1.5.3). Following an investigation, the DEA, in the exercise of its discretionary authority under the contract, concluded that plaintiff should be removed, and plaintiff lost her access to DEA sensitive material as a consequence of her removal.[8] (Ex. 2; Ashcraft Decl.¶¶ 6-7).

As to the discretionary function exception's second prong, there is a presumption that in exercising the discretion accorded to the government, its actions are grounded "in policy." United States v. Gaubert, 499 U.S. 315, 324-25 (1991); Kirchmann v. United States, 8 F.3d 1273 (8th Cir. 1993). Here, the DEA's supervision of FSA workers and the DEA's conclusion to remove plaintiff, which resulted in the termination of her access to DEA sensitive materials, are susceptible to policy analysis. The DEA's decision to remove plaintiff implicates policy considerations regarding both the Asset Forfeiture Program's mission and the DEA's

---

[8] Plaintiff's allegations are based on the fiction that she was terminated from her employment as a result of the DEA's revocation of her "clearance." In fact, the DEA removed plaintiff from her position at its Providence office pursuant to the FSA Contract, and, as a result, her access to DEA sensitive materials terminated. (See Ex. 1, at § C.1.5.3 ; Ashcraft Decl., 6-7.)

relationship with FSA . See Ex. 1, at § C.1.(a )( c) ("key to operating an efficient and effective asset forfeiture program is the ability to deliver quality administrative support to the Program's investigative agencies . . . in a timely and cost effective manner."); Kelly United States, 241 F.3d 755, 762 (9th Cir. 2001) (decision affecting "agency's relationship with contractors" involves policy considerations). In addition, it is well settled that an agency's employment practices have policy ramifications. See Burkhart v. Washington Metro. Area Transit Auth., 112 F.3d 1207, 1217 (D.C. Cir. 1997) (hiring and supervision are susceptible to policy judgment); LaBrecque v. L3 Communication Titan Corp., 2007 WL 1455850, at * 4 (D. Colo. May 16, 2007).

Courts have held that the supervision of a contractor's performance is inherently a discretionary function. Guile v. United States, 422 F.3d 221, 231(5th Cir. 2005). Moreover,"uniformly the federal circuit courts under the FTCA have found that employer decisions such as hiring, discipline, and termination of employees are within the discretionary function exception." Crete v. City of Lowell, 418 F.3d 54, 64 (1st Cir. 2005); see Richman v. Straley, 48 F.3d 1139,1146-47 (10th Cir. 1995). In LaBrecque, for example, the district court concluded that the United States Northern Command's decision to remove two employees of a contractor from their positions at a government facility was squarely within the discretionary function exception. LaBrecque, 2007 WL 1455850, at * 4 (D. Colo. May 16, 2007). Similarly, the DEA's request that FSA remove plaintiff, and the resulting termination of her access to DEA sensitive information fall within the discretionary function exception of 28 U.S.C. § 2680(a). Therefore, the Court lacks subject matter jurisdiction over plaintiff's state-law tort claims against the government.

**b. Plaintiff's State-Law Tort Causes of Action Fail To State a Claim.**

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts take as true "the well pleaded facts as they appear in the complaint . . . ." Coyne v. City of Somerville, 972 F.2d 440, 442-43 (1st Cir. 1992). To survive a motion to dismiss, however, a complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." See Romero-Barcel v. Hernández-Agosto, 75 F.3d 23, 28 n.2 (1st Cir.1996) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir.1988)). Although a complaint need not recite detailed factual allegations, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Huertas-Gonzalez v. University of Puerto Rico, 520 F. Supp.2d 304, 310 (D.P.R. 2007) (citing cases).

**i. The Amended Complaint Lacks any Factual Allegations To Support Plaintiff's Claim of Intentional Infliction of Emotional Distress.**

In Count V, plaintiff alleges intentional infliction of emotional distress by the defendants. To prevail on a claim for common-law intentional infliction of emotional distress under Rhode Island law, a plaintiff must show "extreme and outrageous conduct on the part of the defendant."[9] Jalowy v. Friendly Home, Inc., 818 A.2d 698, 707 (R.I. 2003). Moreover, Rhode Island courts have adopted the "very high standard set forth in the Restatement (Second) Torts § 46 (1965)" with regard to the showing required to

[9] For purposes of this motion, defendants do not dispute plaintiff's assertion that Rhode Island law governs plaintiff's state-law tort claims. (See Amended Compl. ¶ 13).

satisfy this element:

> Liability has been found only where the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

Id.

Plaintiff baldly alleges that defendants' conduct was "extreme and outrageous," (Amended Compl. at ¶59), but the Amended Complaint lacks any factual allegations to support this claim. Plaintiff has not alleged facts upon which a jury could conclude that the DEA's revocation of plaintiff's access to sensitive materials went "beyond the bounds of decency" and was "utterly intolerable in a civilized society." Jalowy, 818 A.2d at 707. Therefore, Count V should be dismissed. See Coxcom, Inc. v. Chafee, 2005 WL 2000969, at *3 (D.R.I. July 19, 2005) ("Even though Defendants found the experience to be unpleasant and inconvenient, they have not alleged sufficiently outrageous facts to state a cause of action for intentional infliction of emotional distress.").

**ii. Plaintiff's Allegation of Negligent Infliction of Emotional Distress Fails To State a Claim.**

In Count VI, plaintiff alleges negligent infliction of emotional distress by the defendants. The Rhode Island Supreme Court, however, has limited the reach of the tort of negligent infliction of emotional distress to cases in which: (1) the plaintiff, while within the zone of danger, was physically endangered by the acts of a defendant; or (2) the plaintiff can establish bystander liability. See Jalowy, 818 A.2d at 710; Marchetti v. Parsons, 638 A.2d 1047, 1049-52 (R.I. 1994). Bystander liability applies when the plaintiff has suffered emotional harm as a consequence of witnessing the defendant's wrongful infliction of injury upon a close relative of

the plaintiff. See Marchetti, 638 A.2d at 1049-52.

Plaintiff alleges neither that she was physically endangered by the DEA's actions nor that she was a bystander who was harmed as a result of defendants' alleged infliction of harm upon a third party. Therefore, Count VI fails as a matter of law. See Coxcom, 2005 WL 2000969, at *4.

**C. Plaintiff's Claims Against Ashcraft Are Jurisdictionally and Substantively Deficient.**

**1. Ashcraft Is Not Subject to Personal Jurisdiction in this Forum.**

The existence of personal jurisdiction over Ashcraft is a necessary predicate to the Court's exercise of authority over her in her individual capacity. CVS Corp. v. Taubman Centers, Inc., 225 F. Supp.2d 120, 123 (D.R.I. 2002). Although plaintiff bears the burden of proving that jurisdiction over Ashcraft is proper, plaintiff's Amended Complaint fails to allege a basis for personal jurisdiction or any facts that would state a prima facie case for personal jurisdiction. Id. Therefore, plaintiff's claims against Ashcraft should be dismissed pursuant to Rule 12(b)(2). See Curran v. Jerome Hotel, 26 F.3d 130, at *2 (9th Cir. 1994) (table) ("because she failed to plead facts showing either general or specific jurisdiction over [defendant], [plaintiff] failed to make a prima facie showing of jurisdiction." ); Reiss v. Clateman, 2008 WL 398949, at *1 (M.D. Fla. Feb. 12, 2008) ("Plaintiff's complaint fails to plead sufficient material facts establishing a basis for personal jurisdiction over Defendants."); Cenage Learning, Inc. v. Buckeye Books, 531 F. Supp.2d 596, 599 (S.D.N.Y. 2008) ("a 'legally sufficient' allegation of jurisdiction of course requires that the allegation appear in the Complaint").

To establish that personal jurisdiction is proper, a plaintiff must show that the long-arm statute of the state in which the federal district court is located grants jurisdiction over the

defendant and that such an exercise of jurisdiction comports with constitutional requirements.[10] Foster-Miller, Inc. v. Babcock & Wilcox, 46 F.3d 138, 144 (1st Cir. 1995). Because Rhode Island's long-arm statute has been held to extend to the constitutional limit, a Rhode Island federal court may proceed directly to the due process analysis. See Levinger v. Matthew Stuart & Co., Inc., 676 F. Supp. 437 , 439 (D.R.I. 1988). For a court's exercise of jurisdiction to comply with constitutional due process, the defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945).

Ashcraft lacks the constitutionally required "minimum contacts" with Rhode Island to support an assertion of jurisdiction over her by the Court. Ashcraft was served by mail in Virginia, (Dckt No. 15), works in Virginia, and lives in Virginia. (Ashcraft Decl., ¶¶ 1-2.) Moreover, the Amended Complaint fails to allege that Ashcraft has engaged in any activity in Rhode Island or purposefully availed herself of the privilege of conducting activities within the state. Therefore, the Court lacks personal jurisdiction over Ashcraft, and all of the claims against her should be dismissed. See Eveland v. Director of C.I.A., 843 F.2d 46, 50 (1st Cir. 1988) ("Without discussing whether the requirements of the long-arm statute have been met, we find that defendants lack the constitutionally required 'minimum contacts' . . . ."); Nwanze v. Phillip

---

[10] Because plaintiff's constitutional and APA allegations against Ashcraft present federal questions, the Court's ability to exercise personal jurisdiction over Ashcraft falls under the Fifth Amendment due process clause rather than its Fourteenth Amendment analogue. Smith v. Pat & Jane Emblems, Inc., 2005 WL 3032535, at *1 (D. Me. Nov. 10, 2005). Nevertheless, where, as here, effective service of process must be based on Rule 4(k)(1)(A) and Rhode Island's long-arm statute, rather than a federal statute, "the inquiry ends up being the same as that of a federal court sitting in diversity." Richards v. Tsunami Softgoods, Inc., 239 F. Supp.2d 80, 82 (D. Me. 2003).

Morris, et al., 6 Fed. Appx. 98, 2001 WL 409450, at *1-2 (2d Cir.2001); D'Onofrio v. SFX Sports Group, Inc., 534 F. Supp.2d 86, 2008 WL 423035, at *4 (Feb. 18, 2008) ("plaintiffs have failed to plead sufficient jurisdictional facts, because acts committed within the scope of employment cannot be imputed to the individual defendants to establish personal jurisdiction over them"); Walton v. Bureau of Prisons, 533 F. Supp.2d 107, 112-13 (D.D.C. 2008) .

**2. Plaintiff's Bivens Claim Fails Because Plaintiff Has No Procedural Due Process Interest at Stake.**

Plaintiff alleges that Ashcraft violated her procedural due process rights. (Count III.) For the same reasons that Count I against the DEA alleging procedural due process violations fails to state a claim, Count III should be dismissed pursuant to Rule 12(b)(6). (See supra Section III.B.1.b.).

**3. Plaintiff's APA Claim Is Improper.**

In Count IV, plaintiff appears to allege that Ashcraft, in her personal capacity, violated the APA, and plaintiff seeks monetary damages as well as injunctive relief. As an initial matter, plaintiff's claim against Ashcraft should be dismissed because plaintiff has alleged an identical APA claim against the DEA, and "[t]here is no longer any reason to sue a federal officer in [her] individual capacity in a suit [under the APA] that is actually against the government." C. Wright & A. Miller, 33 Federal Practice & Procedure, § 8302. Moreover, as discussed above, plaintiff's APA claim fails because the APA does not permit the award of monetary damages and because plaintiff has failed to identify any regulations or procedures with which Ashcraft allegedly failed to comply. (See supra Section III.B.2.)

**4. Plaintiff's State Law-Tort Claims Must Be Dismissed <u>Because the United States Is the Sole Proper Defendant.</u>**

The Westfall Act, also known as the Federal Employees Liability Reform and Tort Compensation Act of 1988, provides that federal employees acting within the scope of their employment are absolutely immune from damage liability on state tort-law claims. 28 U.S.C. § 2679. Indeed, the Westfall Act provides that the FTCA, which permits suits against the United States, is a common-law tort plaintiff's sole remedy for a federal employee's conduct so long as the employee was acting within the scope of her employment when she committed the relevant conduct. Specifically, section 2679 provides:

> The remedy against the United States provided by the [Federal Tort Claims Act] for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim . . . . Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee . . . is precluded without regard to when the act or omission occurred.

28 U.S.C. § 2679 (b)(1); <u>see</u> <u>also</u> <u>Aversa v. United States</u>, 99 F.3d 1200, 1207-08 (1st Cir. 1996). Once a federal employee is sued for damages in a state tort law claim, the Westfall Act provides that the Attorney General may certify that the employee was acting within the scope of her employment at the time of the alleged conduct. <u>Aversa</u>, 99 F.3d at 1208.

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such a claim . . . shall be deemed an action against the United States . . . .

28 U.S.C. § 2679 (d)(1) (emphasis added). Upon such certification, "the employee is dismissed from the action . . . ." <u>Gutierrez de Martinez v. Lamagno</u>, 515 U.S. 417, 420 (1995). Because

the remedy of the FTCA is the exclusive one available to plaintiffs for the alleged wrongful acts or omissions of federal employees acting within the scope of employment, any other civil action or proceeding for money damages against the employee on the same claim is precluded. United States v. Smith, 499 U.S. 160, 165-66 (1991) (citing 28 U.S.C. § 2679(b)(1)).

The Amended Complaint contains three counts alleging state common-law torts against Ashcraft (and others): Count V (Intentional Infliction of Emotional Distress), Count VI (Negligent Infliction of Emotional Distress), and Count VII (Tortious Interference with Contractual Relations).[11] Pursuant to 28 C.F.R. § 15.4, the Attorney General's designee, Robert Corrente, United States Attorney for the District of Rhode Island, has certified that Ashcraft was acting within the scope of her employment at the time of the actions out of which plaintiffs' claims arose. (Dckt. No. 19.) Accordingly, Ashcraft must be dismissed from Counts V through VII of the Amended Complaint.

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss plaintiff's Amended Complaint against the defendants.

[11] The FTCA explicitly excludes from the federal court's jurisdictional ambit "[a]ny claim arising out of . . . interference with contract rights." 28 U.S.C. § 2680(h). Therefore, plaintiff cannot salvage Count VII by asserting tortious interference with contract against the United States. See Vigeant v. United States, 462 F. Supp.2d 221, 225 n.8 (D.R.I. 2006); Gordon v. Gutierrez, 2006 WL 3760134, at *2 (E.D. Va. Dec. 14, 2006) ("These intentional tort claims may not proceed against the sovereign.").

Respectfully submitted,

UNITED STATES DRUG
ENFORCEMENT ADMINISTRATION, ET AL.
By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Richard B. Myrus
RICHARD B . MYRUS
Assistant U.S. Attorney
Fleet Center
50 Kennedy Plaza, 8th FL
Providence, RI 02903
(401) 709-5000
(401) 709-5017 (fax)
Email: richard.myrus@usdoj.gov