UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BRENDA BAILLARGEON,<br>Plaintiff,<br><br>v.<br><br>DRUG ENFORCEMENT ADMINISTRATION,<br>SUSAN D. ASHCRAFT, in her individual capacity,<br>THE UNITED STATES OF AMERICA,<br>JOHN DOE II, in his individual capacity<br>and JOHN DOE III, in his individual capacity,<br>Defendants. | : | C.A. No.: 07-271S |

**PLAINTIFF BRENDA BAILLARGEON'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT UNITED STATES DRUG ENFORCEMENT ADMINISTRATION'S MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiff Brenda Baillargeon ("Plaintiff") respectfully submits this Memorandum of Law in support of her Opposition to Defendant United States Drug Enforcement Administration ("DEA"), Susan D. Ashcraft ("Ashcraft"), and The United States of America's ("United States") (collectively "Defendants") Motion to Dismiss. This action stems from Defendants' abrupt revocation of Plaintiff's security clearance without constitutionally mandated notice and/or an opportunity to be heard concerning any purported allegations against Plaintiff. Plaintiff has set forth the following cognizable claims in her Amended Complaint:

Counts I and II of Plaintiff's Amended Complaint allege the violation of her constitutional due process rights as the Defendants' actions deprived Plaintiff of her protected interests in her chosen profession (asset forfeiture) as well as her good name and reputation. While Count I addresses the basic constitutional principles of

notice and opportunity to be heard, Count II focuses on the DEA's failure to follow regulations and/or its own policies and procedures with respect to revoking Plaintiff's security clearance.[1]

Counts III and IV are based upon the same facts as Counts I and II and set forth valid claims for constitutional violation against Ashcraft, Chief of Operations Management, Asset Forfeiture Section, and the John Doe Defendants.

Counts V and VI set forth well plead tort causes of action sounding in intentional and negligent infliction of emotional distress.[2]

For the reasons discussed below, and arguments counsel will assert at the hearing, Plaintiff respectfully requests this Honorable Court Deny Defendants' Motion to Dismiss.

## II. FACTUAL BACKGROUND[3]

On or about October 1, 2004, Forfeiture Support Associates ("FSA") hired Plaintiff as an asset forfeiture specialist. (Am. Comp. ¶ 15). Plaintiff was assigned to work in the capacity of an asset forfeiture specialist for the DEA, at its Warwick, Rhode Island office, pursuant to a contract entered into between the DEA and FSA. (Am. Comp. ¶ 16). In order to perform her duties and maintain her employment, Plaintiff was required to possess, and did possess, a "DEA Sensitive" security clearance. (Am. Comp. ¶¶ 17, 18).

---

[1] Due to the similarity of Counts I and II, this Memorandum will address the jurisdiction of Counts I and II together.

[2] An unopposed Motion to Substitute the United States of America for Susan D. Ashcraft was filed with respect to counts V-VII of Plaintiff's Amended Complaint; therefore, Defendants' arguments with respect to the tort claims against Defendant Ashcraft are moot.

[3] All factual allegations relevant to Plaintiff's Opposition are contained in Plaintiff's Amended Complaint; however, each allegation is further supported by Affidavit attached as Exhibit 1.

On or about February 4, 2005, Defendants revoked Plaintiff's security clearance. (Am. Comp. ¶ 19). Plaintiff was provided no notice as to the basis of the decision nor offered an opportunity to be heard regarding the merits of the revocation of her Security Clearance. (Am. Comp. ¶ 20). As a result of Defendants' revocation of Plaintiff's security clearance, Plaintiff was unable to continue her employment in the capacity of an asset forfeiture specialist for the DEA, and therefore, was terminated from FSA. (Am. Comp. ¶ 21; See Exhibit 2[4]). Plaintiff was not offered other comparable employment with FSA and was unable to procure other employment in the profession as an asset forfeiture specialist. (Am. Comp. ¶ 21). As a result, Plaintiff has been unable to proceed in her chosen profession and is currently employed as a paralegal.

## III. ARGUMENT

### A. Standard of Review

"When reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the well-pled facts must be taken as true and all reasonable inferences must be drawn in favor of the plaintiff." Alfieri v. Koeller, 2007 U.S. Dist. LEXIS 24003, 8-9 (D.R.I. 2007) (citing Figueroa v. Rivera, 147 F.3d 77 (1st Cir. 1998)). "A court should not grant a motion to dismiss unless 'it appears to a certainty that the plaintiff

[4] Defendants' timeline of events is inaccurate. While Defendants' have asserted that Plaintiff's security clearance was "terminated" *as a result* of her removal from her position at DEA's Providence office, Exhibit 2 unequivocally confirms that the revocation occurred first: "[FSA] has been informed by the [DEA] Headquarters Office of Chief Counsel that effective immediately your DEA security clearance will be revoked and you will be denied access to any DEA facility." "[A]s a result of the loss of your clearance and access to the government facility to which you were assigned, you are unable to perform the duties and responsibilities of your position. Based on this, your employment with FSA will be terminated." See Exhibit 2.

would be unable to recover under any set of facts.'" Id. (quoting Roma Constr. Co. v. A Russo, 96 F.3d 566, 569 (1st Cir. 1996)).

With respect to deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court may look to evidence outside of the pleadings to determine whether jurisdiction exists. Lincoln-Dodge, Inc. v. Sullivan, 2007 U.S. Dist. LEXIS 94618 at *11 (D.R.I. 2007)

> The procedure for deciding the motion depends on whether the jurisdictional facts are intertwined with the merits of the plaintiff's claim. If the relevant facts, which would determine the court's jurisdiction, also implicate elements of the plaintiff's cause of action, a court should apply the standard applicable to a Rule 56 motion for summary judgment and should deny the motion if there is a genuine dispute with respect to a material jurisdictional fact. In most cases, however, where the jurisdictional facts are not intertwined with the merits of the plaintiff's claim, a court is free to weigh the evidence and make findings with respect to relevant to the (sic) jurisdictional facts without considering the merits of the claim.

Id. (citing Torres-Negrn v. J&N Records, LLC, 504 F.3d 151, at 163(1st Cir. 2007) (internal citations and quotations omitted).

**B. Sovereign Immunity is not a bar to Plaintiff's valid constitutional claims against the DEA.**

"The Supreme Court and several courts of appeals have held the federal courts have jurisdiction to review constitutional claims arising from the [security] clearance revocation process." Stehney v. Perry, 101 F.3d 925, 932 (3d Cir. 1996); (citing Webster v. Doe, 486 U.S. 592, 603-04, (1988); Dorfmont v. Brown, 913 F.2d 1399, 1402 (9th Cir. 1990); Jamil v. Secretary, Dept. of Defense, 910 F.2d 1203, 1209 (4th Cir. 1990); Dubbs. v. C.I.A., 866 F.2d 1114, 1120 (9th Cir. 1989); National Fed'n of Fed. Employees v. Greenberg, 983 F.2d 286, 289-90 (D.C. Cir.

1993)); see also Ranger v. Tenet, 274 F. Supp. 2d 1, 7 (D.D.C. 2003) ("Although no one may hold a property interest in a security clearance, a federal agency's revocation of a security clearance may give rise to a due process claim for injury to a liberty interest in reputation.") (internal citation omitted); Pindell v. Wison-McKee, 60 F. Supp. 2d 1244, 1257 (D. Wy 1999) ("To the extent that a private sector worker loses employment because of the revocation of a security pass or security clearance, that worker may be entitled to due process protection in connection with the denial."); Ryan v. Defense Indus. Sec. Clearance Office, 1991 U.S. Dist. LEXIS 21070 at * 4-5 (D. Conn. 1991) (holding that procedural due process claim was reviewable by the court because plaintiff was not challenging the substantive decision denying the issuance of a security clearance, but the unreasonable delay in rendering a decision).

Plaintiff's constitutional claims fall directly in line with the above cases as she is challenging the procedures in connection with the revocation of her security clearance, not the substantive decision.

**1. This Court retains jurisdiction over Counts I and II of Plaintiff's Amended Complaint pursuant to the Administrative Procedures Act and Nonstatutory Review.**

In addition to the above case law, which clearly establishing this Court's jurisdiction to review Plaintiff's constitutional due process claims, two (2) additional avenues provide this Court jurisdiction: (1) the Administrative Procedures Act (for equitable relief only); and (2) nonstatutory review.

***The Administrative Procedures Act***

First, Counts I and II of Plaintiff's Amended Complaint must survive because the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA"), is an express waiver of sovereign immunity and Plaintiff's claims fall squarely within the scope of the APA. Chiefly, 5 U.S.C. § 702 waives sovereign immunity for claims seeking equitable relief. It is well settled "[t]his waiver is for *all* equitable actions for specific relief against a Federal agency or officer acting in an official capacity, and thus applies to any suit whether under the APA or not." Puerto Rico v. United States, 490 F.3d 50, 57-58 (1st Cir. P.R. 2007). (internal quotations and citations omitted). Because Plaintiff seeks equitable relief in Counts I and II, sovereign immunity does not preclude judicial review.

Additionally, § 702 of the APA provides in pertinent part:

> A person suffering legal wrong because of agency action … is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted *or failed to act* in an official capacity or under color of legal authority *shall not be dismissed* nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702 (emphasis added). Agency action is defined as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). The agency action at issue in this matter is Defendant's "failure to act," namely, failing to provide Plaintiff with constitutionally mandated notice and an opportunity to be heard as well as the DEA's failure to follow its own policies and procedures. See Id. As such, the APA's express waiver

of sovereign immunity is applicable to Plaintiff's claims and this Honorable Court should deny Defendant's Motion to Dismiss.

***Nonstatutory Review***

Second, the theory of nonstatutory review provides this Court an additional basis to entertain jurisdiction over Plaintiff's constitutional claims. While "it is long settled law that, as an attribute of sovereign immunity, the United States and its agencies may not be subject to judicial proceedings unless there has been an express waiver of that immunity," the First Circuit has held that "[w]hen a party claims that a violation of its constitutional rights has occurred and it has no effective means other than the judiciary to enforce these rights, [that party] must be able to invoke the existing jurisdiction of the courts for the protection of [its] justiciable constitutional rights." Puerto Rico v. United States, 490 F.3d at 58 (internal quotations and citations omitted). Specifically,

> [i]n the context of agency action, parties occasionally invoke the principles of nonstatutory review. Nonstatutory review is available pursuant to the general federal question jurisdiction of the federal courts under 28 U.S.C. § 1331 in situations where Congress makes no specific choice of [the court in which judicial review is to occur] in the statute pursuant to which the agency action is taken, or in another statute applicable to it. The basic premise behind nonstatutory review is that, even after the passage of the APA, some residuum of power remains with the district court to review agency action that is *ultra vires*. Thus, if a plaintiff is unable to bring his case predicated on either a specific or a general statutory review provision, he may still be able to institute a non-statutory review action.

Puerto Rico v. United States, 490 F.3d at 59.

The First Circuit has held that nonstatutory review is available if: (1) "its absence would wholly deprive the party of a meaningful and adequate means of

vindicating its ... rights;" and (2) "Congress must not have clearly intended to preclude review of the agency's particular determination." Id. (internal citations and quotations omitted).

In the instant matter, absent judicial review, Plaintiff will be wholly deprived of a meaningful and adequate means of vindicating her rights. See Id. Defendant failed to provide Plaintiff with notice and an opportunity to be heard and follow any of its own regulations or procedures with respect to the alleged findings which led to the revocation of her security clearance. As such, without judicial review of Plaintiff's claims and relief compelling Defendant to provide such an opportunity to be heard or for the DEA to abide by its regulations or procedures, Plaintiff will remain with no meaningful and adequate means of vindicating her rights. See Id.

Lastly, Defendants' argument that Count II should be dismissed because Plaintiff "fails to identify the 'regulations and/or procedures' that she relies upon" is fatally flawed. Discovery will provide the parties the opportunity to determine what procedures, if any, Defendants failed to utilize. Whether there existed a lack of procedures or a failure to follow them, these circumstances constitute a constitutional deprivation.

As such, this Honorable Court enjoys subject matter jurisdiction to review Plaintiff's constitutional claims.

**a. Plaintiff enjoyed a constitutionally secured property and/or liberty interest in pursuing her chosen occupation.**

In order to maintain a procedural due process claim, Plaintiff "must first point to a protected liberty or property interest." Centro Medico del Turabo, Inc. v.

Feliciano de Melecio, 406 F.3d 1, 7 (1st Cir. 2005) (citing Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972)). "The right to follow a chosen profession is a property interest protected by the Fifth and Fourteenth Amendments." Lange-Kessler v. Dept. of Edu., 1997 U.S. App. LEXIS 15275 (2d Cir. 1997) (citing Greene v. McElroy, 360 U.S. 474, 492 (1959) ("The right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the "liberty" and "property" concepts of the Fifth Amendment"); see also Colaizzi v. Walker, 812 F.2d 304, 307 (7th Cir. 1987) ("If a state or the federal government formally banned a person from a whole category of employment, it would be infringing liberty of occupation--a component of the liberty that the due process clauses of the Fifth and Fourteenth Amendments protect, and recognized as such almost since the beginning of this nation").[5]

In Cafeteria Workers & Restaurant Workers Union v. McElroy, the plaintiff was a cook employed by a private catering company and working on a military installation, which required a security clearance. 367 U.S. 886 (1961). The plaintiff's security clearance was revoked without a hearing and the Supreme Court held that the revocation did not violate the due process clause of the Fifth Amendment. The court reasoned in part that the plaintiff had been offered but refused similar employment by the private catering company outside the military installation; thus, the plaintiff had been denied only "the right to work at one isolated and specific military installation," not elsewhere in the same profession. Id. at 896.

[5] Based upon these cases cited above, jurisdictions characterize the right to follow a chosen profession as a "property" and a "liberty" interest.

Similarly, in Kartseva v. Dept. of State, the Second Circuit remanded to the district court for a determination of whether the Department of State's disqualification for counterintelligence concerns of plaintiff, a Russian translator for government contracts, interferes with her "constitutionally protected 'right to follow a chosen trade or profession.'" 37 F.3d 1524, 1529 (D.C. Cir. 1994) (quoting Cafeteria Workers, 367 U.S. at 895-96). Interpreting the line of precedent under Cafeteria Workers, the Kartseva court stated, "if [the plaintiff] can show that the [Department of] State's action precludes her from pursuing her profession as a Russian language translator, she will have identified a cognizable liberty interest." 37 F.3d at 1529. "On the other hand, if [the plaintiff] has merely lost one position in her profession but is not foreclosed from reentering the field, she has not carried her burden in this line of cases." Id. (citing Greene, 360 U.S. at 492 "(revocation of a security clearance possibly implicates Fifth Amendment liberty interest where action 'has seriously affected, if not destroyed, [plaintiff's] ability to obtain employment in the aeronautics field')."

In the instant case, Defendant's revocation of Plaintiff's security clearance without notice or a hearing completely precluded her from pursuing her chosen profession as an asset forfeiture specialist. See Kartseva, 37 F.3d at 1529. FSA did not and could not offer Plaintiff similar employment in any other location, and Plaintiff has been entirely foreclosed from reentering the asset forfeiture field. See Cafeteria Workers, 367 U.S. at 896; Kartseva, 37 F.3d at 1529. Plaintiff's chosen profession as an asset forfeiture specialist has been destroyed as a direct result of

Defendants' actions. See Greene, 360 U.S. at 492.[6] As such, Plaintiff enjoyed a protected right to follow her chosen profession as an asset forfeiture specialist and this right has clearly been infringed upon.[7] See Lange-Kessler, 1997 U.S. App. LEXIS 15275.

**b. Plaintiff enjoyed a protected liberty interest in her good name and reputation.**

Additionally, Plaintiff's due process claim must survive because she enjoyed a liberty interest in her good name and reputation. A protected liberty interest exists in a person's "'reputation, good name, honor, and integrity,' as well as in 'being free to move about, live, and practice [her] profession without the burden of an unjustified label of infamy.'" Joelson v. United States, 86 F.3d 1413, 1420 (6th Cir. 1996) (citing Chilingirian v. Boris, 882 F.2d 200, 205 (6th Cir. 1989); Stretten v. Wadsworth Veterans Hosp., 537 F.2d 361, 366 (9th Cir. 1976)). "To establish a deprivation of a protected liberty interest in the employment context, a plaintiff must demonstrate stigmatizing governmental action which so negatively affects...her reputation that it effectively forecloses the opportunity to practice a chosen profession." Id. Moreover, the government entity must publicly disclose the "stigmatizing information." Id.

Here, Defendants revoked Plaintiff's security clearance without any notice whatsoever or an opportunity to explain any *allegedly* questionable conduct. Defendants then publicly disclosed and/or created a false impression by virtue of revoking Plaintiff's security clearance. Without security clearance, Plaintiff could

---

[6] As a result, Plaintiff was forced to entirely change her profession and is currently employed as a paralegal. (Am. Comp. ¶ 22).

[7] See Exhibit 1.

no longer pursue employment as an asset forfeiture specialist. Consequently, Defendants' stigmatizing action so negatively affected her reputation and qualifications that it effectively foreclosed an entire industry to Plaintiff. This is precisely why the District of Columbia Circuit recognized that a security clearance revocation "implicates Fifth Amendment liberty interest where action 'has seriously affected, if not destroyed, [plaintiff's] ability to obtain employment in [plaintiff's] field.'" Kartseva, 37 F.3d at 1529 (citing Greene v. McElroy, 360 U.S. 474, 492 (1959)).

Thus, a Fifth Amendment liberty claim does not require that the DEA barred Plaintiff from obtaining government-related employment (as suggested by Defendants), but rather that the DEA barred her from practicing a chosen profession. This is exactly what the DEA's security revocation caused – a bar to Plaintiff's existence as an asset forfeiture specialist.

Therefore, Plaintiff has established protected property and liberty interests and consistent with the Supreme Court and several Circuit Courts of Appeals, this Honorable court should hear and decide Plaintiff's procedural due process claim arising from Defendant's security clearance revocation procedure.

### 2. Plaintiff has set forth valid state-law tort claims against the government.

#### a. Subject matter jurisdiction is proper as the discretionary function exception is inapplicable.

Defendants' argument that the DEA's decision to revoke Plaintiff's security clearance falls within the discretionary function exception of 28 U.S.C. § 2680(a) is irrelevant to this Action and cannot be a basis to which Plaintiff's cause of action may be dismissed. The discretionary function exception immunizes the federal government from immunity under the FTCA and applies when the government's action "involves an element of judgment or choice" and if the "judgment is of the kind that the discretionary function exception was designed to shield." Dureiko v. United States, 209 F.3d 1345, 1351 (Fed. Cir. 2000). The determination of whether to revoke a security clearance falls under the discretionary function exception as it is one of "those determinations [] committed to the broad discretion of the responsible Executive Branch agency." Cheney v. DOJ, 479 F.3d 1343, 1351 (Fed. Cir. 2007).

Nevertheless, Plaintiff's tort claims arise from the procedure, or lack thereof, of Defendants' revocation of Plaintiff's security clearance; not from the substance of its decision. Therefore, Defendants' "determination of *whether to revoke*" Plaintiff's security clearance is of no consequence to Plaintiff's claims and this Honorable Court should not dismiss Plaintiff's tort claims under this irrelevant theory. See Id.

**b. Plaintiff has properly plead her state-law tort claims to survive a 12(b)(6) motion to dismiss.**

**i. Intentional Infliction of Emotional Distress.**

In order to state a claim for intentional infliction of emotional distress under Rhode Island law, a plaintiff must allege that the defendant has engaged in "extreme and outrageous conduct that intentionally or recklessly resulted in causing [plaintiff] severe emotional distress." Vallinoto v. DiSandro, 688 A.2d 830, 838 (R.I. 1997). "In Rhode Island, a plaintiff must also [allege] physical symptomatology." Id.

In the instant case, Plaintiff has alleged that: (1) Defendants engaged in extreme and outrageous conduct by intentionally and/or recklessly revoking Plaintiff's security clearance thereby suddenly dismissing her from her livelihood and harming her future employment, health and reputation without notice and without an opportunity to rebut the allegations against her (Am. Comp. ¶ 57-59); (2) the nature of Defendants' conduct was particularly extreme and outrageous (Am. Comp. ¶ 59); (3) the extreme and outrageous acts of Defendants caused severe emotional distress to Plaintiff (Am. Comp. ¶ 60); and (4) Plaintiff suffered physical and emotional damage (Complaint ¶ 60).

Plaintiff, by setting forth these facts and allegations in her Complaint, has provided Defendants with fair and adequate notice of the type of claim being asserted. Therefore, Defendants' Rule 12(b)(6) challenge to Count V must be denied.

### ii. Negligent Infliction of Emotional Distress.

In order to state a claim for negligent infliction of emotional distress under Rhode Island Law, a plaintiff must allege that the defendant has engaged in "extreme and outrageous conduct that . . . recklessly resulted in causing [plaintiff] severe emotional distress." Vallinoto, 688 A.2d at 838. "In Rhode Island, a plaintiff must [also allege] physical symptomatology." Id.

In the instant case, Plaintiff has alleged that: (1) Defendants engaged in extreme and outrageous conduct by negligently revoking Plaintiff's security clearance thereby suddenly dismissing her from her livelihood and harming her future employment, health and reputation without notice and without an opportunity to rebut the allegations against her (Am. Comp. ¶ 63-64); (2) the nature of Defendants' conduct was particularly extreme and outrageous (Am. Comp. ¶ 59, 63); (3) Defendants' conduct caused severe emotional distress to Plaintiff (Am. Comp. ¶ 65); and (4) Plaintiff suffered physical and emotional damage (Am. Comp. ¶ 65).

Plaintiff, by setting forth these facts allegations in her Complaint, has provided Defendants with fair and adequate notice of the type of claim being asserted. Therefore, Defendants' Rule 12(b)(6) challenge to Count VI must be denied.

### C. Plaintiff has set forth valid claims against Defendant Ashcraft.[8]

#### 1. Defendant Ashcraft is subject to Personal Jurisdiction.

It is well established that, "to hear a case, a court must have personal jurisdiction over the parties, 'that is, the power to require the parties to obey its decrees.'" Daynard v. Ness, Motley, Loadholt, Richardson, & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002) (quoting United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 35 (1st Cir. 1999)). "The plaintiff bears the burden of proving the court's personal jurisdiction over a defendant." Daynard, 290 F.3d at 50.

Rhode Island's long-arm statute, R.I. Gen. Laws § 9-5-33, authorizes this court to exercise jurisdiction over non-resident defendants to the fullest extent permitted by the United States Constitution. See Donatelli v. Nat'l Hockey League, 893 F.2d 459, 461 (1st Cir.1990); see also Morel ex rel. Moorehead v. Estate of Davidson, 148 F.Supp.2d 161 (D.R.I.2001). Courts should "accept the plaintiff's (properly documented) evidentiary proffers as true," and construe those facts "in the light most congenial to the plaintiff's jurisdictional claim." Hannon v. Beard, 2008 U.S. App. LEXIS 9218, 5-6 (1st Cir. Mass. Apr. 28, 2008) (quoting Daynard, 290 F.3d at 51.

The First Circuit has developed a three-prong test for analyzing the due process considerations for the existence of specific personal jurisdiction: First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Sostre v. Leslie, 2008 U.S. Dist. LEXIS 10015, 8-9 (D.R.I.

---

[8] Defendant has not moved to dismiss on behalf of any John Doe defendants who were alleged to be employees and/or agents of the DEA. (Am. Comp. ¶¶ 5, 6). As such, Counts III-VII should minimally survive with respect to John Doe defendants.

forum-state activities. Sostre v. Leslie, 2008 U.S. Dist. LEXIS 10015, 8-9 (D.R.I. Jan. 4, 2008) (quoting Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir.1992)). Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Id. at 8. Third, the exercise of jurisdiction must be reasonable. Id. at 8. In order for a court to exercise specific personal jurisdiction, all three factors-relatedness, purposefulness and reasonableness-must be satisfied. Id. at 9.

**a. Relatedness.**

The first prong of the due-process test is a consideration of relatedness. To meet the relatedness requirement of specific personal jurisdiction, "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." Id. at 1089. However, "a defendant need not be physically present in the forum state to cause injury (and thus 'activity' for jurisdictional purposes) in the forum state." Northern Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005). Generally, relatedness refers to the requirement that the underlying claim "arise out of" or be "related to" the activities within the forum state. The relatedness standard is a "flexible, relaxed standard." Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994).

The factual allegations contained in Plaintiff's Amended Complaint and Ashcraft's Affidavit demonstrate that Ashcraft possessed the authority to take action to protect Plaintiff, but refused to do so and in fact, authorized the revocation of her

security clearance and termination of her employment at the Providence Field Office. See Affidavit of Susan D. Ashcraft, attached to Defendants memorandum in support of their Motion to Dismiss. Ashcraft's decision to revoke Plaintiff's security clearance and remove Plaintiff from her position at the DEA is directly related to Plaintiff's resulting damages. Although Ashcraft claims she has never been to Rhode Island, her supervisory actions are clearly related to Plaintiff's revocation of her security clearance, termination, and resulting damages including her inability to procure employment in her chosen profession, which all occurred here in the forum state of Rhode Island. As such, the relatedness prong should be satisfied.

**b. Purposeful Availment.**

In the case of intentional torts such as Plaintiff's claims, a party's knowledge that his or her intentional conduct will cause injury and that the major impact of that injury will occur within the forum, constitutes a purposeful contact or substantial connection whereby the intentional tortfeasor could reasonably expect to be haled into the forum State's courts to defend his or her actions. See, e.g., Hugel v. McNell, 886 F.2d 1, 4 (1st Cir. 1989). The "effects" test was set forth by the Supreme Court in Calder v. Jones, 465 U.S. 783, 789 (1984). In Calder, the Court found personal jurisdiction over two employees of the National Enquirer magazine who lived and worked in Florida but wrote and edited a defamatory article about Shirley Jones, an entertainer, who lived in California. The Court noted that, "petitioners intended to, and did, cause tortious injury to respondent in California." Id. at 787. "California is the focal point both of the story and of the harm suffered....[petitioners'] intentional, and allegedly tortious, actions were expressly aimed at California." Id. at 789-790.

Ashcraft's supervisory authority over Plaintiff, including her control over the DEA's Asset Forfeiture Program and its personnel decisions including her decision to revoke Plaintiff's security clearance and remove Plaintiff from her position, all indicate that Ashcraft's conduct caused or increased Plaintiff's damages and that she knew or should have known that her actions would have this effect. Her conduct was specifically aimed and designed to cause "tortuous injury" to Plaintiff in her place of employment and livelihood in Rhode Island. Therefore, Ashcraft availed herself of the benefits of doing business within the forum and that it was foreseeable that her actions would have an affect within the forum.

**c. Reasonableness**

The third prong of the test involves a determination of whether or not the Court's exercise of jurisdiction over Defendant is reasonable. United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992). Personal jurisdiction may only be exercised if it would be reasonable, pursuant to a series of factors known as the "Gestalt factors." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995). Those factors are: (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies. Id. at 145.

This forum's interest in obtaining the efficient administration of this claim overrides any reasonable inconvenience Ashcraft may suffer from having to

participate in this matter. Plaintiff was employed and terminated in Rhode Island and therefore Ashcraft's actions occurred in, or were directed towards, Rhode Island. Most if not all of the other Defendants reside in Rhode Island. Most if not all of the witnesses will be found here.

The State of Rhode Island and the federal government have an undeniable interest in securing the well-being of people employed within this forum and in protecting workers from the unconscionable conduct that Plaintiff was subjected to. Plaintiff's only other recourse against Ashcraft, should she be dismissed as a Defendant in this matter, is to bring a claim against her in Virginia, far removed from Plaintiff's place of employment. The cost of doing so, both in terms of litigation costs and in time missed from work, would be prohibitive. The equities involved demonstrate that the just and efficient resolution of this matter must occur in this forum.

Accordingly, this Honorable Court should decide that the assertion of personal jurisdiction over Ashcraft comports with due process principles as stated in the United States Constitution and as a result, this Honorable Court should find that it may exercise personal jurisdiction over Ashcraft in this matter.

**2. Plaintiff has set forth a valid <u>Bivens</u> claim against Defendant Aschcraft.**

Counts III and IV of Plaintiff's Amended Complaint must survive Defendants' Motion to Dismiss pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (191). "The <u>Bivens</u> doctrine allows plaintiffs to vindicate certain constitutionally protected rights through a

private cause of action for damages against federal officials in their individual capacities." DeMayo v. Nugent, 517 F.3d 11, 14 (1st Cir. Mass. 2008). A claimant who seeks relief under Bivens must prove the violation of a constitutional right by a federal agent acting under color of federal law. Id. Plaintiff's Amended Complaint clearly states a claim against Ashcraft, a federal official, in her individual capacity for damages as a result of a violation of her constitutionally protected rights.

Defendants' sole basis that Plaintiff's Bivens claims should fail is the flawed contention that Plaintiff enjoyed "no procedural due process interest" For the reasons articulated in Section III, B, 1, above, Plaintiff did in fact possess a cognizable procedural due process interest.

Finally, Defendants' contention that Count IV should be dismissed because an "identical" claim exists against the DEA is without merit and unsupported by any legal precedent. Defendants also reiterate that Plaintiff has "failed to identify any regulations or procedures with which Ashcraft allegedly failed to comply." However, for the reasons articulated in Section III, B, 1, above, whether there existed a lack of procedures or a failure to follow them, these circumstances constitute a constitutional deprivation.

## IV. CONCLUSION

Based upon the foregoing analysis, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion to Dismiss Plaintiff's Complaint.

Respectfully submitted,
Plaintiff,
By Her Attorneys,

/s/ Jeffrey D. Sowa

Jeffrey D. Sowa, Esquire #5764
Michael J. Jacobs, Esquire #7480
**LaPlante Sowa Goldman**
West Exchange Center
67 Cedar Street
Providence, RI 02903
(401) 273-0200 (telephone)
(401) 273-0250 (facsimile)

## CERTIFICATION

I hereby certify that the within document has been electronically filed with the Court on this 28th day of May, 2008, and is available for viewing and downloading from the ECF system. Service on the counsel of record, as listed below, will be effectuated by electronic means:

Richard B. Myrus, Esquire
Assistant US Attorney
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

/s/ Jeffrey D. Sowa, Esquire

**EXHIBIT 1**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BRENDA BAILLARGEON,<br>Plaintiff,<br><br>v.<br><br>DRUG ENFORCEMENT ADMINISTRATION,<br>SUSAN D. ASHCRAFT, in her individual capacity,<br>THE UNITED STATES OF AMERICA,<br>JOHN DOE II, in his individual capacity<br>and JOHN DOE III, in his individual capacity,<br>Defendants. | : | C.A. No.: 07-271S |

## AFFIDAVIT OF BRENDA BAILLARGEON

I, Brenda Baillargeon, depose and state under oath as follows:

1. In or about October 1990 I obtained a "DEA Sensitive" security clearance and worked in Data Entry with the Drug Enforcement Administration ("DEA") pursuant to its Administrative Contract.

2. In or about June 1991, I was promoted to the Asset Forfeiture Contract and worked as an asset forfeiture specialist with the DEA.

3. On or about October 4, 2004, I was hired by Forfeiture Support Associates ("FSA"), which was awarded the Asset Forfeiture Contract, and continued to work with the DEA in the capacity of an asset forfeiture specialist.

4. At all times material hereto, I was required to possess, and did possess, my "DEA Sensitive" security clearance.

5. On February 8, 2005 I was terminated from FSA because the DEA revoked my security clearance and denied my access to any DEA facility.

6. The DEA purportedly revoked my security clearance due to alleged "time and attendance" concerns; however, the DEA never notified me of its decision nor provided me with an opportunity to be heard regarding the same.

7. After the revocation of my DEA sensitive security clearance FSA did not offer me similar employment in the asset forfeiture field and I have been unable to obtain employment in the asset forfeiture profession.

8. A U.S. Marshall administrator advised me that as a result of the revocation of my DEA sensitive security clearance I "would not be considered" for a position in the asset forfeiture department of the U.S. Marshall Service.

9. I am currently employed as a paralegal in a Rhode Island law firm.

Brenda J. Baillargeon
Brenda Baillargeon

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

Subscribed and sworn to before me in Providence, Rhode Island on the 28th day of May, 2008.

Cheryl E. Heilbrun
Notary Public #57800
My commission expires: March 21, 2010

**EXHIBIT 2**

FORFEITURE SUPPORT ASSOCIATES

FSA

February 8, 2005

Brenda Baillargeon
501 Black Plain Road
North Smithfield, RI 02896

Dear Ms. Baillargeon,

Forfeiture Support Associates (FSA) has been informed by the Drug Enforcement Administration (DEA) Headquarters Office of Chief Counsel that effective immediately your DEA security clearance will be revoked and you will be denied access to any DEA facility on the Department of Justice Asset Forfeiture Support Program contract. According to the DEA, this action is being taken based on performance concerns relating to your time and attendance. This letter formalizes the actions resulting from the DEA revoking your security clearance and barring of your access to the job site.

As you are aware, being able to maintain a security clearance and access to the facility is a precondition of your employment. Accordingly, as a result of the loss of your clearance and access to the government facility to which you were assigned, you are unable to perform the duties and responsibilities of your position. Based on this, your employment with FSA will be terminated effective February 8, 2005.

As a participant in FSA's benefits program, your health coverage will cease as of midnight on the last day of the month. However, federal law permits terminated employees to continue their health insurance coverage under a separate cost plan, the Consolidated Omnibus Budget Reconciliation Act (COBRA). Information regarding your options under this plan will be provided under separate cover.

If you are a participant in FSA's 401(k) Retirement Plan, information related to the distribution of these monies may be obtained by calling Principal at 1-800-547-7754.

You have the right to apply for unemployment compensation at your appropriate jurisdictional employment office. They will determine your eligibility for unemployment benefits.

Your final check or direct deposit advice, including any wages earned through your last day of work and any vested vacation balance, will be sent to you on the next regularly scheduled payday or as mandated by your jurisdiction.

Should you have any questions concerning this termination action, you may contact me at (814) 534-2850.

Sincerely,

Virgil D. Woolley
North East Region Director