IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BRENDA BAILLARGEON, Plaintiff | ) | |
| v. | ) | C.A. 07-271S |
| DRUG ENFORCEMENT ADMINISTRATION, SUSAN ASHCRAFT, THE UNITED STATES OF AMERICA, JOHN DOE II, and JOHN DOE III, Defendants | ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM**

## I. INTRODUCTION

In her opposition to defendants' motion to dismiss, plaintiff concedes a number of points that doom her Amended Complaint. First, with respect to plaintiff's allegations of due process violations by the Drug Enforcement Administration ("DEA") and Susan Ashcraft, plaintiff concedes that she had no constitutional right to access DEA sensitive material. Second, plaintiff offers no support for her claims in Counts I-IV that she had a property right in continued employment with Forfeiture Support Associates ("FSA"). Third, with regard to her assertions in Counts I-IV that she was denied a liberty interest to pursue future employment, plaintiff cites no allegations in the Amended Complaint that the DEA publicized information that was false and stigmatizing, as required to state a claim under the First Circuit standard. Last, despite alleging in Count II and Count IV that the DEA and defendant Susan Ashcraft failed to comply with DEA regulations regarding access to sensitive materials, plaintiff now concedes that she has no idea whether or not there are any such regulations or procedures.

As to Counts V-VII, in which plaintiff alleges state-law tort claims, plaintiff concedes that the DEA's decisions regarding access to sensitive material fall within the discretionary function exception to the Federal Tort Claims Act. Plaintiff also fails to cite any facts in the Amended Complaint that support her formulaic, superficial allegations of intentional and negligent infliction of emotional distress. Last, plaintiff makes no effort to defend Count VII in which she impermissibly alleges tortious interference with contract by the United States.

As to plaintiff's Bivens claims against Ashcraft, plaintiff fails to identify any allegations in the Amended Complaint that support personal jurisdiction over Ashcraft. Plaintiff cites no allegations that Ashcraft purposefully and voluntarily directed any claim-related activities toward Rhode Island. Instead, plaintiff relies exclusively on the claim that she suffered the consequences of Ashcraft's acts in this District, which is insufficient to support personal jurisdiction over Ashcraft.

As discussed below, plaintiff's Amended Complaint is fatally deficient and should be dismissed.

## II. ARGUMENT

Defendants have moved to dismiss the Amended Complaint pursuant Federal Rules 12(b)(1) and 12(b)(6). As to defendants' Rule 12 (b)(1) motion, plaintiff does not dispute that she bears the burden of establishing that the Court has subject matter jurisdiction. With respect to defendants' motion to dismiss for failure to state a claim, however, plaintiff misstates the standard under Rule 12(b)(6). Plaintiff invokes the "no set of facts" language from Conley v. Gibson, 355 U.S. 41, 45-46 (1957), despite that the United States Supreme Court has "retire[d]" this pleading standard. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1969 (2007). In

Twombly, the Court clarified that Conley "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." Id. at 1969. Thus, contrary to plaintiff's characterization of the Rule 12(b)(6) standard, to survive a motion to dismiss for failure to state a claim, a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." Id. at 1965. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (citations omitted).

### A. Plaintiff's Claims Against the Government and Ashcraft Are Jurisdictionally and Substantively Flawed.

As a preliminary matter, the DEA is jurisdictionally immune from plaintiff's claims for monetary damages stemming from the constitutional torts that plaintiff alleges in Counts I and II. More fundamentally, plaintiff fails to state a claim because she has no constitutionally protected property interest in access to DEA sensitive materials or continued employment under the DEA's contract with Forfeiture Support Associates. Last, plaintiff also has failed properly to allege a violation of her purported liberty interest in pursuing work in the asset forfeiture field. Therefore, plaintiff's procedural due process claims against the DEA and Ashcraft (Counts I-IV) fail as a matter of law.

#### 1. The DEA Is Immune from Suit in an Action Seeking Monetary Damages for a Constitutional Violation.

Plaintiff seeks, inter alia, monetary damages for Counts I and II of the Amended Complaint, which are directed to the DEA. (Amended Compl., ¶¶35-36 and ¶¶41-42.) The

plaintiff offers a lengthy discussion of irrelevant jurisdictional concepts such as nonstatutory review under the APA, but plaintiff misses the point. Sovereign immunity shields the federal government and its agencies from suit for damages absent a waiver. FDIC v. Meyer, 510 U.S. 471, 485 (1994). Counts I and II against the DEA for monetary damages fail because plaintiff has not met, or even attempted to meet, her burden to show that the United States waived sovereign immunity from monetary damages in this case. Therefore, the Court lacks subject jurisdiction, and plaintiff's claims for damages with respect to Count I and II should be dismissed. See FDIC, 510 U.S. at 475; 5 U.S.C. ¶702.

**2. Plaintiff Has No Protected Property or Liberty Interest at Stake.**

Plaintiff attempts to invoke her procedural due process rights, but the requirements of due process do not apply unless she can first show that she has a cognizable property or liberty interest. See Board of Regents v. Roth, 408 U.S. 564, 571 (1972). Where there is no constitutional right, no process is due under the Constitution. Dorfmont v. Brown, 913 F.2d 1399, 1403 (9th Cir. 1990).

Plaintiff concedes that "no one has a 'right' to a security clearance." Department of the Navy v. Egan, 484 U.S. 518, (1988)). Instead, plaintiff contends that she "was vested with a property and/or liberty interest in her continued employment with FSA" and "with a property and/or liberty interest in her right to follow her chosen profession."[1] (Amended Compl., ¶¶25-

[1] Plaintiff muddles the distinction between a due process claim based on a property interest and a due process claim based on a liberty interest. Unlike a claim based on a property interest, a "liberty interest implicates [an employee's] post-employment reputation rather than any right to continued employment with the [agency]." Doe v. U.S. Dep't of Justice, 753 F.2d 1092, 1102 (D.C. Cir. 1985).

26.) Plaintiff's claims fail as a matter of law, however, because she had no right of any kind to continued employment with FSA (at the DEA's facility or elsewhere), and the Amended Complaint does not allege the elements of a liberty deprivation claim.

### a. <u>Plaintiff Had No Entitlement to Continued Employment with FSA.</u>

To establish a constitutionally protected interest in continued employment, plaintiff must demonstrate that she had a legally cognizable expectation that she would retain her position. <u>See</u> <u>Marrero-Guiterrez v. Molina</u>, 491 F.3d 1, 8 (1st Cir. 2007). There is, however, no allegation in the Amended Complaint that plaintiff had an entitlement to continued employment with either the DEA or FSA, and that omission is fatal. Moreover, plaintiff has failed to point to any statute, contract, or rule that would support a legitimate claim of continued employment. <u>Id.</u> Indeed, in her opposition memorandum, plaintiff does not respond at all to the defendants' argument that she had no protected property or liberty interest in her at-will job with FSA.[2] Therefore, plaintiff's claims that the DEA and Ashcraft somehow deprived her of a due process interest in continued employment should be dismissed. (Amended Compl., ¶¶ 25, 45.)

### b. Plaintiff Has Not Been Deprived of Any <u>Liberty Interest in the Right to Earn a Living.</u>

Plaintiff contends that she has been deprived of a protected liberty interest in the ability to work in her chosen field.[3] (Amended Compl., ¶¶ 26, 45.) Plaintiff, however, concedes that

---

[2] Where, as here, "the opposing party files a responsive memorandum but fails to address certain arguments made by the moving party," the court should treat "those arguments as conceded." <u>United States v. Real Property Identified as Parcel 03179-005R</u>, 287 F. Supp.2d 45, 61 (D.D.C. 2003).

[3] Plaintiff asserts that, in addition to a liberty interest in pursuing her chosen occupation, she had a protected liberty interest in her reputation, but plaintiff concedes that the procedural due process liberty analysis is the same for both. (Pl.'s Mem. at 8-9.)

the DEA has not disqualified her, officially debarred her from future employment with the DEA, or otherwise foreclosed her from government employment.[4] (See Pl.'s Mem. at 12.) Moreover, plaintiff does not dispute that she is currently employed as a paralegal and that she is free to work on asset forfeiture matters in that capacity. (See Pl.'s Mem. at 3.)

Plaintiff lost a specific position with FSA because of her conduct. The ability to hold such a position "stands on precisely the same footing as the security clearance itself. If there is no protected interest in a security clearance, there is no liberty interest in employment requiring such a clearance." Dorfmont, 913 F.2d at 1403; Jamil v. Secretary, Dept. of Defense, 910 F.2d 1203, 1208 at n.5, (4th Cir. 1990) ("Jamil did not have a property or liberty interest in his security clearance, so he had no constitutional rights to procedural due process in connection with its revocation.").

"The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." Bishop v. Wood, 426 U.S. 341, 349 (1976). To make a tenable liberty deprivation claim, plaintiff must, at a minimum, show that she was denied the ability to pursue work in her chosen field and that her dismissal was accompanied by the publication of information that was false and stigmatizing. In Burton v. Town of Littleton, 426 F.3d 9, 15 (1st Cir. 2005) (citations omitted), the First Circuit Court of Appeals set forth the required elements of an employment deprivation claim:

---

[4] Conspicuously absent from plaintiff's Amended Complaint is any allegation that she was deprived of due process with respect to the termination of her employment. Plaintiff asserts only that she did not receive adequate process regarding her access to sensitive materials. (Amended Compl., ¶ 20.)

> First, the alleged statements must level a 'charge against [the employee] that might seriously damage his standing and associations in his community' and place his 'good name, reputation, honor, or integrity . . . at stake." . . . Second, the employee must dispute the charges made against him as false. Third, the stigmatizing statements or charges must have been intentionally publicized by the government. . . . Fourth, the stigmatizing statements must have been made in conjunction with an alteration of the employee's legal status, such as termination of his employment. Finally, the government must have failed to comply with the employee's request for an adequate name-clearing opportunity.

Plaintiff's due process liberty claim fails as a matter of law because the Amended Complaint alleges only that she was unable to continue in her job with FSA or find other employment as an Asset Forfeiture Specialist as a result of the DEA's alleged revocation of her access. (Amended Compl., ¶¶ 21-22.) Plaintiff ignores the elements of the First Circuit standard and has not alleged in her Amended Complaint that: (1) the DEA made a statement that placed her "good name, reputation, honor or integrity at stake;" (2) the DEA made any statements about her that were false; (3) the DEA publicly disseminated any "seriously defamatory charges in public, for example, at public meetings or to the press;" and (4) that plaintiff requested a name-clearing opportunity.[5] Id. at 14-16.

In her opposition memorandum, plaintiff attempts to remedy the deficiency in the Amended Complaint by vaguely asserting that the defendants "publicly disclosed and/or created a false impression by virtue of revoking Plaintiff's security clearance." (Pl.'s Mem. at 11.) This allegation, however, is not in the Amended Complaint. Moreover, even if plaintiff had included this allegation, it would not save her liberty deprivation claim because the mere revocation of a

[5] Although plaintiff contends that she was denied procedural due process, plaintiff also concedes that she submitted a grievance claim to the DEA pursuant to 28 U.S.C. 2675(a) and that "[p]laintiff has exhausted all applicable administrative remedies." (Amended Compl., ¶ 10.) Given plaintiff's admission that she was afforded, and has exhausted, all administrative remedies, she cannot credibly assert that the DEA denied her due process.

clearance "does not constitute an adjudication of one's character" and therefore does not constitute a defamatory action. See Jamil, 949 F.2d at 1209. Plaintiff's Amended Complaint does not contain the necessary allegations to state a claim for a due process liberty deprivation, and Counts I-IV should be dismissed.[6]

### 3. **Plaintiff Has Failed To Identify Any Regulation or Procedure with which the DEA Failed To Comply.**

As to Count II, although plaintiff could perhaps have challenged the DEA's alleged failure to follow DEA regulations under the Administrative Procedures Act ("APA"), plaintiff now has taken the position that she is not asserting an APA claim. Instead, according to plaintiff, Count I and Count II both allege a procedural due process violation: "While Count I addresses the basic constitutional principles of notice and opportunity to be heard, Count II focuses on the DEA's failure to follow regulations and/or its own policies and procedures." (Pl.'s Mem. at 1-2.)

In addition to being nothing more than a repetition of Count I, Count II is deficient because plaintiff cannot identify any law, regulation, or procedure that the DEA allegedly failed to follow in this matter. Jamil, 910 F.2d at 1208 ("[P]laintiff has failed to point to the rule or the regulation which he alleges has been violated."). Indeed, plaintiff's opposition memorandum makes clear that she has no evidentiary basis at all for alleging that the DEA (or Ashcraft) failed to follow DEA procedures. Rather, plaintiff relies on allegations that she concedes may, or may not, be borne out by discovery: "Discovery will provide the parties the opportunity to determine

[6] Plaintiff relies on Kartseva v. Department of State, 37 F.3d 1524 (2d Cir. 1994). Kartseva, however, is distinguishable because in that case, the plaintiff alleged that the Department of State "declared her ineligible for assignment to a DOS contract or project." Id. at 1526. Here, plaintiff has not alleged that the DEA has declared her ineligible for future employment.

what procedures, if any, Defendants failed to utilize." (Pl.'s Mem. at 8 (emphasis added).) Plaintiff's obvious strategy of alleging facts first and then seeking to investigate is improper, and Count II should be dismissed.[7] See Sprague Farmers, Inc. v. Providian Corp., 929 F.Supp. 1125, 1130-31 (C.D. Ill 1996); Fed. R. Civ. P. 11, Advisory Committee Note 1993 ("Tolerance of factual allegations in initial pleadings by plaintiffs or defendants when specifically identified as made on information and belief does no relieve litigants from the obligation to conduct an investigation into the facts that is reasonable under the circumstances; it is not a license to make claims . . . without any factual basis.").

**B. Plaintiff's State-Law Tort Claims Against the Government Are Jurisdictionally and Substantively Deficient.**

**1. The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Tort Claims.**

Plaintiff's state-law tort claims against the United States (Counts V-VI) allege that the United States and other defendants intentionally and negligently inflicted emotional distress by revoking plaintiff's clearance. (See Amended Compl., ¶¶ 57, 64.) In addition, plaintiff asserts that the United States interfered with her contractual relations. (Count VII.) Plaintiff's claims fail on jurisdictional grounds because plaintiff's removal from her position with the DEA and the resulting expiration of her access to DEA materials fell within the discretionary function exception to the Federal Tort Claims Act's waiver of sovereign immunity. (See Defs.' Mem. in Support of Motion to Dismiss at 13-16.) Indeed, plaintiff concedes that "[t]he determination of whether to revoke a security clearance falls under the discretionary function exception as it is

[7] Count IV mirrors Count II but substitutes Ashcraft for the DEA as defendant. For the same reasons that Count II fails as a matter of law, Count IV also fails.

one of those determinations [] committed to the broad discretion of the responsible Executive Branch agency." (Pl.'s Mem. at 13 (citation omitted).)

Plaintiff devotes only two sentences to opposing the defendants' discretionary-function argument and cites no cases that address the FTCA. Plaintiff's position is opaque, but she seems to contend that, although the decision to remove plaintiff was wholly discretionary, the procedure for doing so was not. Plaintiff's position is flawed because she cites no rule or regulation that imposed a nondiscretionary duty on the DEA. Moreover, plaintiff ignores that the DEA acted pursuant to its clear discretionary authority under the FSA Contract, which provides that the government had "the right to require [FSA] to reassign from this contract any Contractor employee(s) who is deemed incompetent, careless unsuitable or otherwise objectionable, or whose continued use under the contract is deemed contrary to the best interests of the Government." (Ex. 1 to Defendants' Memorandum in Support of Motion To Dismiss, at § C.1.5.3.)

**2. The Amended Complaint Lacks Any Factual Allegations To Support Plaintiff's Claim of Intentional Infliction of Emotional Distress.**

Although a complaint need not recite detailed factual allegations, a plaintiff must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 28 n. 2 (1st Cir 1996); see Huertas-Gonzalez v. University of Puerto Rico, 520 F. Supp.2d 304, 310 (D.P.R. 2007). According to the United States Supreme Court, "a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.Ct. at 1965. With respect to the tort of intentional infliction of emotional distress, a plaintiff "must set forth facts

demonstrating both outrageous conduct and a physical harm resulting from that conduct." Coxcom, Inc. v. Chafee, 2005 WL 2000969, at *3 (D.R.I. July 19, 2005). In disregard of this clear pleading standard, the only action alleged in Count V is that defendants revoked plaintiff's purported security clearance. Count V does "not set forth outrageous, atrocious or utterly intolerable conduct and therefore fails to state a cause of action for intentional infliction of emotional distress." Coxcom, Inc., 2005 WL 2000969, at *3.

### 3. Plaintiff Fails To State a Claim of Negligent Infliction of Emotional Distress.

In Count VI, plaintiff alleges negligent infliction of emotional distress by the defendants. Under Rhode Island law, however, a cause of action for negligent infliction of emotional distress is viable only where the plaintiff is a bystander to defendant's wrongful conduct. See Iacampo v. Hasbro, Inc., 929 F. Supp. 562, 581 (D.R.I. 1996) (dismissing claim for negligent infliction because plaintiff "has alleged that her emotional distress has resulted from injuries to her"); see also Jalowy v. Friendly Home Inc., 818 A.2d 698, 707 (R.I 2003). In her opposition memorandum, plaintiff ignores the elements of this cause of action and cites one case, Vallinoto v. DiSandro, 688 A.2d 830 (R.I. 1997), in which negligent infliction of emotional distress was not even at issue. Plaintiff fails to allege that she was a bystander to defendants' wrongful conduct and her contention that Count VI should survive simply because the defendants caused her emotional distress completely misses the mark. Based on the facts alleged, there is no viable claim for negligent infliction of emotional distress. See Coxcom, Inc., 2005 WL 2000969, at *4.

**4. Count VII Should Be Dismissed Because the United States Has Not Waived Sovereign Immunity for the Claim of Tortious Interference.**

In Count VII, plaintiff alleges that the United States tortuously interfered with her contractual relations. The FTCA, however, explicitly excludes from the federal court's jurisdiction "any claim arising out of . . . interference with contract rights." 28 U.S.C. § 2680(h). Not surprisingly, plaintiff has failed to defend Count VII in her opposition to defendant's motion to dismiss, and therefore Count VII should be dismissed. See Vigeant v. United States, 462 F. Supp.2d 221, 225 n.8 (D.R.I. 2006).

**C. Plaintiff's Claims Against Ashcraft Are Jurisdictionally and Substantively Deficient.**

**1. Ashcraft Is Not Subject To Personal Jurisdiction in this Forum.**

Before a federal court may exercise personal jurisdiction over a defendant, a constitutionally sufficient relationship between the defendant and the forum must exist. Omni Capital Int'l Ltd. V. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104 (1987). The Supreme Court has repeatedly stated that the constitutional touchstone is whether the defendant purposefully established minimum contacts in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). Thus, a court may exercise jurisdiction over a nonresident defendant in accordance with due process only if that defendant has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. See Asahi Metal Industry Co., Ltd. V. Superior Court of California, 480 U.S. 102 (1987).

A plaintiff can meet her burden regarding personal jurisdiction by establishing "general" or "specific" jurisdiction. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

General jurisdiction occurs when the defendant has continuous and systematic general business contacts with the forum state. See Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999). In determining specific jurisdiction, the question is whether the dispute "relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." Id. This circuit divides the minimum contacts analysis for specific personal jurisdiction into three inquiries: relatedness, purposeful availment, and reasonableness. CVS Corp. v. Taubman, 225 F. Supp.2d 120, 124 (D.R.I. 2002).

Plaintiff asserts Bivens claims against Ashcraft in her individual capacity, and therefore plaintiff must establish personal jurisdiction for Ashcraft individually. See Robertson v. Merola, 895 F. Supp. 1 (D.D.C. 1995). Plaintiff's Amended Complaint, however, does not allege facts that relate to personal jurisdiction over Ashcraft. In paragraph 12, plaintiff asserts jurisdiction under 28 U.S.C. § 1331, the Fifth Amendment of the Constitution, the APA, and Bivens. These allegations address only subject matter jurisdiction and cannot, without more, serve as a basis for asserting personal jurisdiction as to Ashcraft.

In any event, plaintiff concedes that there is no general jurisdiction over Ashcraft, and plaintiff cannot establish specific jurisdiction. It is undisputed that Ashcraft has never been to Rhode Island and does not own property in Rhode Island. Moreover, plaintiff does not allege that Ashcraft ever transacted business in Rhode Island concerning plaintiff via telephone, mail, electronic mail, or any other medium. Therefore, Ashcraft did not purposefully avail herself of the privilege of conducting activities in Rhode Island or have any reasonable basis to anticipate being hailed into a Rhode Island forum. Ashcraft simply does not have contacts with this District sufficient to satisfy due process.

In Eveland v. Director of C.I.A., 843 F.2d 46, 50 (1st Cir. 1988), the First Circuit Court of Appeals considered whether a district court had personal jurisdiction over government defendants accused of torts that purportedly harmed a Massachusetts resident. The First Circuit Court of Appeals concluded: "From even a liberal reading of the complaint, it appears that defendants have absolutely no contacts with Massachusetts. There are no indications that they have done business here or have engaged in any other activity within this jurisdiction." Similarly, in Stephens v. Coleman, 712 F. Supp. 1571, 1577 (N.D. Ga. 1989), the district court rejected plaintiff's assertion that the court had personal jurisdiction over two government officials in a case alleging APA and procedural due process violations that arose out of a decision not to promote the plaintiff. The district court concluded that personal jurisdiction was lacking because, inter alia, "Mr. Coleman's contacts with the forum are practically nonexistent. They consist of telephone calls to the state and a vacation in 1983." Id.; see Kinslow, 2006 WL 3486866, at * 5 (N.D. Ill. Dec. 1, 2006) ("Three phone calls within a month, including one not initiated by defendants, do not establish contacts with Illinois necessary to provide jurisdiction."). Here, of course, plaintiff does not allege that Ashcraft made any calls to Rhode Island or had any other contact with anyone in the state.

Plaintiff's reliance on the "effects" test set forth in Calder v. Jones, 465 U.S. 783 (1984) is misplaced. Calder did not make a "dramatic change" in the due-process analysis. Wallace v. Heron, 778 F.2d 391, 395 (7th Cir. 1985). Indeed, the "effects" test is to be narrowly construed. Sostre v. Leslie, 2008 WL 239527, at *5 (D.R.I. Jan. 29, 2008) (finding no personal jurisdiction). The First Circuit Court of Appeals has noted that Calder's "effects" test is "specifically designed for use in a defamation case . . . [and] whether [it] was ever intended to apply to numerous other

torts, such as conversion or breach of contract is unclear." United States v. Swiss Am. Bank, 274 F.3d 610, 624 (1st Cir. 2001). Thus, the "Constitutional touchstone remains whether the defendant[s] purposefully established minimum contacts in the forum state." Burger King, 471 U.S. at 474.

In Calder, the Court found personal jurisdiction in California in a liable action arising out of an article in the National Enquirer newspaper that was written and edited by the defendants. The Court found it significant that the Enquirer, with a weekly circulation of approximately 5 million copies, had a large distribution in California: "About 600,000 of those copies, almost twice the level of the next highest State, are sold in California." Calder, 465 U.S. at 785. The Court also observed that, in addition to making frequent business trips to California, the author relied "on phone calls to sources in California for the information contained in the article" and "called respondent's home [in California] and read her husband a draft of the article so as to elicit his comments upon it." Id. at 785. The Court concluded that "California is the focal point both of the story and of the harm suffered." Id. at 789 (emphasis added). According to the Court, personal jurisdiction was appropriate in California because the defendants "knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation." Id. at 790 (emphasis added).

In contrast to Calder, where 600,000 copies of the defendants' article were distributed in California and where California was "the focal point of the story," there is no allegation that Ashcraft sent even a single letter to Rhode Island regarding plaintiff. (Id. at 789.) Put differently, unlike the defendants' actions in Calder, the Amended Complaint fails to allege any facts establishing that Ashcraft's actions were calculated to cause harm to plaintiff in the forum

state. Therefore, Ashcraft cannot be said to have purposefully availed herself of the privilege of conducting activities in Rhode Island.

Plaintiff's Amended Complaint fails to satisfy any of the prongs of the First Circuit test. First, to meet the relatedness requirement of specific personal jurisdiction, "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." United Elec. Radio and Mach. Workers of Am. V. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992). The Amended Complaint, however, does not contain any allegations that link Ashcraft to this District.[8] Instead, plaintiff argues only that Ashcraft's actions "directly related to Plaintiff's resulting damages." (Pl.'s Mem. at 18.) Unfortunately for plaintiff, the effect of Ashcraft's alleged action is not relevant to the relatedness inquiry. See Levin v. Harned, 304 F.Supp2d 136, 151 (D. Mass. 2003) ("the Court is constrained by Swiss Am Bank from even considering the effects of the tortious conduct until after the relatedness prong has been established . . . .").

The Amended Complaint also fails to satisfy the purposeful availment prong of the First Circuit test. As with the relatedness prong, plaintiff attempts to meet her burden by relying entirely on Calder and the effects of Ashcraft's alleged actions. (Pl.'s Mem. at 18.) In Swiss American Bank, however, the court noted that in Calder, "the actual tort or injury, not just its

[8] Personal jurisdiction over Ashcraft does not arise merely because the Court may have jurisdiction over the DEA. See Keeton v. Hustler Magazine, 465 U.S. 770, 781 n.13 (1984). Rather, "[p]ersonal jurisdiction over the employees or officers of a corporation in their individual capacities must be based on their personal contacts with the forum and not their acts and contacts carried out solely in a corporate capacity." D'Onofrio v. SFX Sports Group Inc., 534 F. Supp.2d 86, 91 (D.D.C. 2008). Here, plaintiff has not alleged that Ashcraft has transacted business in this District or caused tortious injury within the District in an individual capacity. See Ibrahim v. District of Columbia, et al., 357 F. Supp.2d 187, 193 (D.D.C. 2004).

consequences, occurred within the forum." Swiss Am. Bank, 274 F.3d at 624. Here, in contrast to Calder, plaintiff does not allege that Ashcraft's alleged wrongdoing occurred in Rhode Island, but only that the effects were felt here. Thus, the facts in the Amended Complaint are insufficient to demonstrate that Ashcraft directed activities toward this District in connection with plaintiff. See Sostre, 2008 WL 239527, at *5.

Last, under the third prong of the analysis, the Court's exercise of jurisdiction over Ashcraft, a federal employee who did nothing but make a personnel determination in Virginia, would not be reasonable. The fact that plaintiff resides in Rhode Island does not outweigh the burden on Ashcraft of appearing in a distant forum with which she does not have minimum contacts.

## III. CONCLUSION

For the reasons set forth above, the plaintiff's Amended Complaint should be dismissed.

Respectfully submitted,

UNITED STATES DRUG
ENFORCEMENT ADMINISTRATION, et al.

By its Attorneys

ROBERT CLARK CORRENTE
United States Attorney

/s/ Richard B. Myrus
RICHARD B. MYRUS
Assistant U.S. Attorney
50 Kennedy Plaza, 8th FL
Providence, RI 02903
(401) 709-5000
(401) 709-5017 (fax)
Email: richard.myrus@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of July, 2008, I electronically filed the within Reply Memorandum in Support of Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim with the Clerk of the United States District Court for the District of Rhode Island using the CM/ECF System. The following participants have received notice electronically.

Jeffrey D. Sowa, Esq.
Michael J. Jacobs, Esq.
LaPlante Sowa Goldman
67 Cedar Street
Providence, RI 02903

/s/ Richard B. Myrus
Richard B. Myrus
Assistant U.S. Attorney