UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

BRENDA BAILLARGEON                    :
                                      :
         v.                           :        C.A. No. 07-271S
                                      :
DRUG ENFORCEMENT                      :
ADMINISTRATION, et. al.               :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is presently before the Court on a Motion to Dismiss (Document No. 21) (the

"Motion") filed by Defendants the United States Drug Enforcement Administration (the "DEA"),

Susan D. Ashcraft and the United States of America (collectively, "Defendants").  Defendants seek

dismissal pursuant to Fed. R. Civ. P.12(b)(1) and 12(b)(6).   Plaintiff Brenda Baillargeon

("Plaintiff"), filed a timely Objection to Defendants' Motion to Dismiss.  (Document No. 25).

Defendants filed a Reply to the Objection.  (Document No. 28).

The Motion has been referred to me for preliminary review, findings and recommended

disposition.  See 28 U.S.C. § 636(b)(1)(B); LR Cv 72.  A hearing was held on July 24, 2008.  After

reviewing the parties' memoranda, listening to the arguments of counsel and considering relevant

legal research, this Court recommends that Defendants' Motion to Dismiss (Document No. 21) be

GRANTED and that the case be DISMISSED.

**Facts**

On or about October 1, 2004, Plaintiff was hired by Forfeiture Support Associates ("FSA"),

to work as an Asset Forfeiture Specialist. (Document No. 13, ¶ 15).  Pursuant to a contract entered

into between FSA and the DEA, Plaintiff was assigned by FSA, her employer, to work at the DEA's

Warwick, Rhode Island location.  Id. ¶ 16.  As a requirement to being employed as an Asset

Forfeiture Specialist, Plaintiff had to obtain a "DEA Sensitive" security clearance. Id. ¶ 17. Plaintiff

obtained such a clearance from the DEA.  Id. ¶ 18.

On or about February 4, 2005, Plaintiff's security clearance was revoked.  Id. ¶ 19.  Plaintiff

was not afforded notice or a hearing concerning the reasons for her clearance being terminated.  Id.

¶ 20.  Because her security clearance was revoked, Plaintiff was no longer eligible to work for FSA

at the DEA's Warwick office as an Asset Forfeiture Specialist, and her employment with FSA was

terminated.  Id. ¶ 21.  FSA did not offer Plaintiff comparable employment, and she has been unable

to secure other employment in the field of asset forfeiture.  Id. ¶ 21.  Plaintiff filed a six-count

Amended Complaint alleging that her constitutional right to due process was violated by the

revocation of her security clearance (Counts I, II, III and IV) and that the Defendants' actions

constituted negligent and intentional infliction of emotional distress (Counts V and VI).  Defendants

include the DEA, the United States of America and three people in their individual capacity: Susan

D. Ashcraft, Chief of the Asset Forfeiture Section of the DEA and two John Doe Defendants.  Id.

¶¶ 4-6.

**Standard of Review**

Defendants have moved to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(1) for

lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be

granted.  Motions to dismiss under Federal Rules 12(b)(1) and 12(b)(6) are subject to the same

standard of review.  See Masterson v. United States, 200 F. Supp. 2d 94, 97 (D.R.I. 2002) citing

Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir.1994).  In ruling on such a motion,

the Court construes the complaint in the light most favorable to the plaintiff, taking all well-pleaded

allegations as true and giving the plaintiff the benefit of all reasonable inferences. Id. See also

Morey v. Rhode Island, 359 F. Supp. 2d 71, 74 (D.R.I. 2005). The Court will dismiss the claims

only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Masterson, 200

F. Supp. 2d at 97.

**Discussion**

Counts I through IV of the Amended Complaint allege Plaintiff was deprived of certain

constitutional rights when her security clearance was revoked. Count I is a procedural due process

claim against the DEA, alleging Plaintiff was not afforded notice and an opportunity to be heard

concerning the revocation of her clearance. Count II alleges that the DEA failed to follow its own

regulations, policies and/or procedures when it revoked Plaintiff's security clearance. Counts III

and IV allege constitutional claims against Ashcraft and the John Doe Defendants. Finally, Counts

V and VI allege state-law tort claims for intentional and negligent infliction of emotional distress

against all Defendants.

**1.      Count I:  Plaintiff's Constitutional Due Process Claims**

The Court begins with a consideration of whether Plaintiff has alleged facts sufficient to

survive a 12(b)(6) attack on her constitutional due process claims. In order to state a cognizable

procedural due process claim, Plaintiff first must allege the deprivation of a constitutionally

protected liberty or property interest. See Cleveland Bd. of Edu. v. Loudermill, 470 U.S. 532, 538

n.3 (1985); Dorfmont v. Brown, 913 F.2d 1399, 1403 (9th Cir. 1990). Reviewing the allegations set

forth in the Amended Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff

has failed to clear this preliminary hurdle. First, the Court notes that Plaintiff identifies the liberty

and/or property interest implicated as her "right to follow her chosen profession as an asset forfeiture specialist...." Document No. 26 at p. 11. However, Plaintiff concedes that Defendants' "revocation of Plaintiff's security clearance without notice or a hearing" was the action which caused her to be foreclosed from pursuing her career in the asset forfeiture field. See Document No. 26 at p. 10 ("[d]efendant's revocation of Plaintiff's security clearance without notice or a hearing completely precluded her from pursuing her chosen profession as an asset forfeiture specialist."). It is evident that the revocation of Plaintiff's security clearance is the action which precipitated her claim that she is unable to follow in her chosen profession. Accordingly, the Court must consider whether the revocation of a security clearance resulting in a loss of right to follow a chosen profession states a claim for violation of due process. As discussed below, it does not.

Plaintiff argues that the Supreme Court's decision in Cafeteria and Restaurant Workers Union v. McElroy, 367 U.S. 886 (1961), supports her position. In that case, the plaintiff, a cook, was employed by a private company but worked at a U.S. Naval weapons plant. The plaintiff's job required a security clearance, and her clearance was ultimately revoked by a Naval Security Officer without a hearing or notice. The plaintiff alleged a due process violation – a claim which the Supreme Court denied, in part, on the grounds that the plaintiff could have secured other employment as a cook without the need for a security clearance. Id. at pp. 898-899. Thus, the Court reasoned that the plaintiff had not been denied her right to work in her chosen profession. Id.

Plaintiff argues that the Cafeteria Workers case supports her claims because, in order to pursue work in her chosen profession, she must have a DEA security clearance. Plaintiff points out that, unlike the Plaintiff in Cafeteria Workers who could secure other employment as a cook without a security clearance, she cannot. Although facially appealing, Plaintiff's argument is fundamentally

flawed because Plaintiff's entire claim for loss of opportunity to follow in her desired profession is

grounded in the loss of her DEA security clearance, and the loss of such a security clearance does

not state a cognizable due process claim.  See Jamil v. Dep't of Def., 910 F.2d 1203, 1209 (4th Cir.

1990) (revocation of a security clearance "does not infringe upon one's property or liberty

interests.").   In fact, the Ninth Circuit Court of Appeals considered a claim similar to Plaintiff's (an

employee of a defense contractor who lost her job because her security clearance was revoked by

the Department of Defense) and noted that the procedural due process claims concerning the

plaintiff's ability to practice her chosen profession "[s]tands on precisely the same footing as the

security clearance itself.  If there is no protected interest in a security clearance, there is no liberty

interest in employment requiring such clearance."  Dorfmont, 913 F. 2d at 1403.  The Court of

Appeals reasoned that the plaintiff had not been "deprived of the right to earn a living...[but]

only...the ability to pursue employment requiring a Defense Department security clearance."  Id.

In ultimately rejecting the plaintiff's due process claims, it concluded that the plaintiff had not

established a cognizable liberty or property interest entitled to due process protection because

"[t]here is no right to maintain a security clearance, and no entitlement to continued employment

at a job that requires a security clearance."  Id. at 1404.  This Court finds the reasoning of the Ninth

Circuit in Dorfmont to be persuasive and recommends that the District Court find that Plaintiff has

failed to state a legally cognizable claim that she was deprived of procedural due process.

As a second avenue of relief, Plaintiff contends that the DEA deprived her of a protected

Fifth Amendment liberty interest in her "good name and reputation."  Document No. 26 at p. 11.

In her Amended Complaint, Plaintiff merely states that she "enjoyed a liberty interest in her good

name and reputation", ¶ 27, but pleads no other facts in support of this claim.  In her Objection to

the Motion to Dismiss, Plaintiff cites precedent from the Sixth and Ninth Circuits arguing that to

prevail on this liberty claim she must "demonstrate stigmatizing governmental action

which...forecloses the opportunity to practice a chosen profession" and that the government

"publicly disclose the stigmatizing information." Document No. 26 at p. 11.  Plaintiff argues that

the revocation of her security clearance satisfies both prongs of the Sixth and Ninth Circuit tests

since the revocation foreclosed her opportunity to work in the asset forfeiture field and because the

revocation was "publicly disclosed."   Document No. 26 at p. 11.

        In order to be actionable as a liberty interest deprivation:

> First, the alleged statements must level a 'charge against [the
> employee] that might seriously damage his standing and associations
> in his community' and place his 'good name, reputation, honor, or
> integrity…at stake'....Second, the employee must dispute the charges
> made against him as false.  Third, the stigmatizing statements or
> charges must have been intentionally publicized by the government.
> That is, the defamatory charges must have been aired 'in a formal
> setting (and not merely the result of unauthorized 'leaks').  Fourth,
> the stigmatizing statements must have been made in conjunction with
> an alteration of the employee's legal status, such as the termination
> of his employment.  Finally, the government must have failed to
> comply with the employee's request for an adequate name-clearing
> opportunity.

Burton v. Town of Littleton, 426 F.3d 9, 15 (1st Cir. 2005) citing Wojcik v. Mass. State Lottery

Comm'n , 300 F.3d 92, 103 (1st Cir. 2002).  Here, Plaintiff has not plead facts sufficient enough to

state a liberty interest claim.  While it is true that there can be a liberty interest in reputation in the

employment context,[1] Plaintiff has not alleged the facts necessary under Wojcik to state an actionable liberty interest claim in her good name and reputation.

First, Plaintiff has not met the injury requirement of the Wojcik test. In Beitzell v. Jeffrey, 643 F.2d 870, 878 (1st Cir. 1981), the First Circuit Court of Appeals found that the plaintiff did not meet the injury requirement when he failed to show that the discussion of his inadequate tenure credentials became public, or were made available to other employers or that they interfered with his ability to obtain other employment.  Plaintiff has not sufficiently alleged how the revocation of her security clearance will seriously damage her standing in the community or how it will place her reputation or good name at stake.

Second, Plaintiff has not alleged that the reason for her security revocation was false.  See Document No. 13.  All that Plaintiff has alleged is that she did not have an opportunity to be heard. See Document No. 13 at ¶ 20.

Third, Plaintiff has not sufficiently alleged that Defendant disseminated any allegedly defamatory statement about the revocation of her security clearance.  Id.  A formal statement is necessary to constitute intentional publication.  Silva v. Worden, 130 F.3d 26, 32-33 (1st Cir. 1997). The Court of Appeals in Silva noted that a plaintiff must show that defendants disseminated the "defamatory charges, in a formal setting (and not merely as the result of unauthorized 'leaks'), and thereby significantly have interfered with the employee's ability to find future employment."  Id.; see also Serrano Medina v. United States, 709 F.2d 104, 109 (1st Cir. 1983) (a former civilian

---

[1] While Plaintiff's claimed injury relates to her employment, Plaintiff was employed by FSA (a non-party) and not by Defendants.  Thus, there is an issue as to whether the Wojcik test extends beyond the arena of public-sector employment.  See Wojcik, 300 F.3d at 103 (recognizing "an exception to th[e] general rule [that defamation does not implicate constitutional rights] exists where a public-sector employer creates and disseminates a false and defamatory impression about an employee in connection with the employee's discharge").  It is not, however, necessary to reach that issue, as Plaintiff fails in any event to state a claim under Wojcik.

employee on a military base had no liberty interest claim regarding his denial of access to the base where the "charge [resulting in denial] was never specifically articulated or made public..."). All that is alleged in the Amended Complaint is that Defendants revoked Plaintiff's Security Clearance. Document No. 13 at ¶ 19. Noticeably absent from the Complaint is any allegation that the reason for the revocation of security clearance was intentionally publicized.

While Plaintiff has successfully plead the final two elements of the Wojcik test, her failure to sufficiently plead the first three elements is fatal to her claim. For the foregoing reasons, I recommend that the District Court find that Count I fails to state a claim under Fed. R. Civ. P 12(b)(6). Because I recommend that Count I be dismissed because it fails to state a claim, there is no need to consider the Government's alternative contention that Count I should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

### 2. Count II: Plaintiff's APA Violation Claim

Count II of Plaintiff's Amended Complaint asserts that the DEA violated the Administrative Procedure Act, 5 U.S.C. § 551, by failing to follow DEA regulations. In her brief and at the hearing, Plaintiff failed to cite to the Court a specific DEA regulation, or any other statute, regulation or policy which Defendants violated. Instead, Plaintiff claims that some as-yet unidentified DEA regulation has been violated, but that if no DEA regulations exist, that is in and of itself an APA violation. In short, Plaintiffs do not know if a regulation exists or if one has been violated. Even under the liberal standards of notice pleading, such conjecture is not sufficient to survive a properly supported Rule 12(b)(6) motion. Accordingly, I recommend that the District Court dismiss Count II.

### 3. Counts III and IV: Plaintiff's Claims Against Ashcraft and John Doe Defendants

Count III of the Amended Complaint asserts a <u>Bivens</u> claim against Defendant Ashcraft and

John Doe Defendants, and Count IV asserts an APA claim against Defendant Ashcraft and the John

Doe Defendants.  <u>See</u>, <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388 (1971) (Plaintiffs may

vindicate certain constitutionally protected rights through a private cause of action against federal

officials in their individual capacities).  Counts III and IV fail to state a claim under Fed. R. Civ. P.

12(b)(6) for the same reason that the Court recommends dismissing Counts I and II against the DEA.

Thus, I recommend that the District Court dismiss Counts III and IV.

4.      **Counts V and VI: Plaintiff's State Tort Law Claims**

A.      **Intentional Infliction of Emotional Distress**

In order to prevail on a claim for intentional infliction of emotional distress, a party must

prove that conduct directed toward it was "extreme and outrageous."  <u>Hoffman v. Davenport-</u>

<u>Metcalf,</u> 851 A.2d 1083, 1089 (R.I. 2004).  The test adopted by the Rhode Island Supreme Court

examines whether the "the conduct has been so outrageous in character, and so extreme in degree,

as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized community."  <u>Id.</u> at 1090.  Stated another way, "the recitation of the facts

to an average member of the community would arouse his resentment against the actor, and lead him

to exclaim, 'Outrageous!'"  <u>Id.</u> (citation omitted.)  <u>See</u> <u>also</u> Restatement (Second) of Torts § 46.

Further,  "a plaintiff must...prove physical symptomatology resulting from the alleged improper

conduct." <u>Hoffman</u>, 851 A.2d at 1089 (citing <u>Vallinoto v. DiSandro</u>, 688 A.2d 830, 838 (R.I. 1997)).

In essence, Plaintiff must set forth facts demonstrating both outrageous conduct and a

physical harm resulting from that conduct. Plaintiff has failed to clear the first hurdle – she simply

does not set forth outrageous, atrocious or utterly intolerable conduct in the Amended Complaint.

Although this Court does not doubt that Plaintiff's experience in having her security clearance revoked and losing her job was unpleasant, the facts recited do not give rise to a claim that the Defendants' behavior went "beyond all possible bounds of decency." Plaintiff also has not alleged any physical harm. Thus, Plaintiff fails to state a legally viable claim for intentional infliction of emotional distress under Rhode Island law, and I recommend that Count V be DISMISSED.

### B. Negligent Infliction of Emotional Distress

In order for a litigant to recover for negligent infliction of emotional distress in Rhode Island, "a party must (1) be a close relative of the victim, (2) be present at the scene of the accident and be aware that the victim is being injured, and (3) as a result of experiencing the accident, suffer serious emotional injury that is accompanied by physical symptomatology." Marchetti v. Parsons, 638 A.2d 1047, 1052 (R.I. 1994) "Absent these three elements, a plaintiff who seeks to recover for emotional distress arising out of an injury to a relative may not recover for negligent infliction of emotional distress." Id.

By limiting the test for negligent infliction of emotional distress to these three factors, the Rhode Island Supreme Court has, "limited the reach of the tort [ ] to cases of bystander liability." Liu v. Striuli, 36 F. Supp. 2d 452, 480-481 (D.R.I. 1999) Cases of bystander liability arise "when the plaintiff has suffered emotional harm as a consequence of witnessing the defendant's wrongful infliction of injury upon a close relative of the plaintiff." Id.; see also Iacampo v. Hasbro, Inc., 929 F. Supp. 562, 581 (D.R.I. 1996) (holding that a cause of action for negligent infliction of emotional distress under Rhode Island law is viable only where the plaintiff is a bystander to defendant's wrongful injury of a third party).

In this case, Plaintiff misunderstands the required elements for a <u>prima facie</u> case of negligent infliction of emotional distress. Plaintiff fails to plead even one element of the test, but instead has essentially claimed that Defendants' actions (whether negligent or intentional) caused her emotional distress. Plaintiff's arguments completely miss the mark on this claim, and based on the facts alleged, there is no viable cause of action for negligent infliction of emotional distress. Accordingly, I recommend that the District Court DISMISS Count VI of the Amended Complaint.

**Conclusion**

For the reasons discussed above, I recommend that Defendants' Motion to Dismiss (Document No. 21) be GRANTED and that Plaintiff's Amended Complaint be DISMISSED.[2]

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. <u>See</u> Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


    /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
November 13, 2008

---

[2] Under these circumstances, the Court would generally consider recommending dismissal with leave to file an amended complaint. However, this case was initiated over fifteen months ago and this is Defendants' Second Motion to Dismiss. Defendants' first Motion to Dismiss (Document No. 8) raised many of the same arguments as the pending Motion to Dismiss but was rendered moot when Plaintiff amended over that Motion on February 12, 2008. <u>See</u> Document No. 13. Thus, Plaintiff has already had one opportunity to refine and clarify her Complaint and the Court concludes that a second opportunity to do so is not warranted.