UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

- - - - - - - - - - - - - - - - - -
                                    :
BRENDA BAILLARGEON,                 :
                                    :
        Plaintiff,                  :
                                    :
    vs.                             :    C.A. No. 07-271 S
                                    :
DRUG ENFORCEMENT ADMINISTRATION,    :
SUSAN D. ASHCRAFT, in her           :
individual capacity,                :
THE UNITED STATES OF AMERICA,       :
JOHN DOE II, in his individual      :
capacity, and JOHN DOE III, in      :
his individual capacity,            :
                                    :
        Defendants.                 :
- - - - - - - - - - - - - - - - - -


<u>**MEMORANDUM AND ORDER**</u>

WILLIAM E. SMITH, United States District Judge.

     This matter is before the Court on Plaintiff's Objection to
the Report and Recommendation of Magistrate Judge Almond to dismiss
her First Amended Complaint in its entirety.  Plaintiff has brought
a seven-count Complaint alleging that the United States Drug
Enforcement Administration ("DEA") and its employees and agents
violated her constitutional rights, as well as federal and state
laws when their revocation of her security clearance resulted in
the termination of her employment.   For the reasons explained
below, the Court accepts the Report and Recommendation ("R&R") as
to Counts II, IV, V and VI, but rejects it as to Counts I and III.
Count VII is also dismissed for the reasons stated herein.

I.   Background

In October 2004, Plaintiff was hired to work as an Asset Forfeiture Specialist for Forfeiture Support Associates ("FSA"), a private Virginia-based company contracted to perform services for the DEA.  Plaintiff was assigned to the company's Warwick, Rhode Island field office.  A condition for her employment was a government security clearance, which she received from the DEA. This clearance authorized her access to sensitive but unclassified materials.  In February 2005, Plaintiff's security clearance was revoked at the request of the DEA, and she was then terminated by her employer.[1]  Plaintiff states that she "was provided no notice as to the basis of the decision nor offered an opportunity to be heard regarding the merits of the revocation of her Security Clearance."  (First Am. Compl. ¶ 20.)   FSA did not offer her any alternative employment, and she was unable to find other work in her field.  According to Plaintiff, she was forced to leave the asset forfeiture profession and now works as a paralegal.

II.  Standard of Review

Defendants' motion to dismiss is a dispositive one, and, consequently, Magistrate Judge Almond's R&R will be reviewed *de*

---

[1] Defendants assert that Baillargeon was terminated for cause by FSA and that Defendants subsequently revoked her security clearance.  For purposes of reviewing the motion to dismiss, the Court accepts the chronology as set forth by Plaintiff.  However, this sequential discrepancy is pivotal to the outcome of Plaintiff's claim because a terminated employee has no valid interest in retaining a security clearance.

*novo* by this Court, as provided by Fed. R. Civ. P. 72(b)(3).   In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept as true the allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996).   The United States Supreme Court, in abrogating the frequently-cited formulation in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957), restated the proper pleading standard as follows: "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 563 (2007).

More recently, in <u>Ashcroft v. Iqbal</u>, --- U.S. --- 129 S. Ct. 1937 (2009), the Court further refined the standard, explaining that, while a court must accept the plaintiff's version of the facts as long as those facts are plausible, it need not accept as true formulaic legal conclusions set forth in the complaint.  <u>Id.</u> at 1949.

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Id.</u>, at 1950.

III. The Dismissed Counts

Magistrate Judge Almond recommends the dismissal of Counts II, IV, V and VI.  This Court adopts the R&R as to the dismissal of these Counts, and concurs with the rationale for their dismissal as set forth therein.

A.   Count II

In Count II, Plaintiff alleges that Defendant DEA deprived her of her right to due process under the Fifth Amendment of the United States Constitution by violating its own rules and regulations when it revoked her security clearance without: 1) providing her with the details and circumstances of any complaints about her performance; 2) affording her an opportunity to rebut any allegations; and 3) affording her any opportunity to be heard before or after the revocation.

Plaintiff has failed to cite any regulation, rule, statute or procedure which she alleges the DEA has violated.  As Judge Almond notes, "Even under the liberal standards of notice pleading, such conjecture is not sufficient to survive a properly supported Rule 12(b)(6) motion."  (R&R 8.)  The Court agrees with this conclusion. It is not the responsibility of the Court to fill in the blanks for Plaintiff.  As the First Circuit has held: "Judges are not expected to be mindreaders.  Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace."  <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st

Cir. 1990) (quoting Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988)).

B.    Count IV

In this Count, Plaintiff again claims that unspecified DEA regulations were violated by Defendant Susan Ashcraft, Chief of the Asset Forfeiture Section of the DEA, and by the two John Doe Defendants, who are employees or agents of the DEA.  Judge Almond recommends the dismissal of this Count based on the same reasoning as applied to Count II, and the Court agrees.

C.    Count V

This Count asserts a Rhode Island common law claim for the intentional infliction of emotional distress, against all Defendants:  the DEA, the United States, and the three DEA employees/agents in their individual capacities.  Plaintiff alleges that their extreme and outrageous conduct caused her mental anguish accompanied by physical manifestations.

Judge Almond recommends dismissal of this Count on its merits because it fails to meet the test established by the Rhode Island Supreme Court that "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Hoffman v. Davenport-Metcalf, 851 A.2d 1083, 1090 (R.I. 2004) (internal quotation and citation omitted).  This recommendation is proper.

Moreover, in her Objection to the Report and Recommendation, Plaintiff does not address this Count, which provides an additional basis for its dismissal. <u>See</u> Fed. R. Civ. P. 72(b)(3); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).

D.    Count VI

Count VI is another Rhode Island common law claim, against all Defendants, for negligent infliction of emotional distress. Plaintiff alleges that all Defendants negligently failed to investigate the complaints against her at work and negligently revoked her security clearance, with resulting mental anguish and physical manifestations. Judge Almond properly recommends dismissal of this Count because it fails to state a *prima facie* cause of action under Rhode Island law, as set forth in <u>Marchetti v. Parsons</u>, 638 A.2d 1047, 1052 (R.I. 1994), which requires, *inter alia*, that the claimant be a close relative of an accident victim and be present at the accident.

As with Count V, Plaintiff made no objection to Judge Almond's recommended dismissal, providing an additional basis for the dismissal of Count VI.

E.    Count VII

In her final state law claim for tortious interference with contractual relations, Plaintiff alleges that she had an employment contract with FSA, and that Ashcraft and the two John Doe Defendants caused FSA to terminate the contract when they revoked her security

clearance.   This Count appears to have been abandoned by Plaintiff who failed to address it in her Opposition to Defendants' Motion to Dismiss.   Count VII is not specifically addressed in the R&R, which recommends the dismissal of Plaintiff's Complaint in its entirety. As with Counts V and VI, Plaintiff neglected to mention it in her objection to the R&R.   Consequently, this Count is dismissed. Fed. R. Civ. P. 72(b)(3); <u>Park Motor Mart</u>, 616 F.2d at 605.

IV.   The Surviving Counts

The Court parts company with the recommendations contained in the R&R as to Counts I and III.   The Court believes, for the reasons explained below, that these Counts set forth allegations sufficient to support a colorable constitutional claim, at least sufficient to survive a 12(b)(6) motion, that Plaintiff was deprived of her Fifth Amendment right to due process when the DEA summarily revoked her security clearance.

A.   Count I

In this Count, Plaintiff alleges the DEA violated her constitutional right to procedural due process in revoking her security clearance.   Plaintiff identifies two constitutionally-protected interests: 1) her right to follow her chosen profession, and 2) her right to her good name and reputation; both of which she claims were taken with no procedural protections afforded either before or after. Plaintiff seeks punitive damages, compensatory damages and equitable relief, including a hearing.

-7-

1.    Right to follow chosen profession

Plaintiff argues that the DEA's revocation of her security clearance, without notice or hearing, effectively deprived her of her right to earn a living in her chosen profession.  Established case law clearly identifies the right to follow one's chosen profession as a constitutionally-protected liberty interest.  Greene v. McElroy, 360 U.S. 474, 492 (1959).  However, a substantial body of case law has held that there is no constitutional right to a security clearance.  Relying on Dorfmont v. Brown, 913 F.2d 1399, 1403 (9th Cir. 1990), Judge Almond recommends the dismissal of Plaintiff's claim on the grounds that "the revocation of a security clearance resulting in a loss of right to follow a chosen profession" does not state a claim for violation of due process. (R&R 4.)

In Dorfmont v. Brown, plaintiff Dorfmont worked at Hughes Aircraft on a government defense contract.  She found that she needed the help of a computer programmer in her work and decided to seek the outside assistance of Lubemir Peichev, a Bulgarian national serving a life sentence in federal prison for his role in the attempted hijacking of an airliner.  When the Defense Department learned of Dorfmont's arrangement with Peichev, it issued a statement "explaining that it could not make a preliminary finding that granting Dorfmont continued access to classified material was 'clearly consistent with the national interest.'" 913 F.2d at 1400.

The case was submitted to a hearing examiner and a four-day hearing ensued during which evidence and testimony was presented by both Dorfmont and the Department of Defense. The hearing examiner concluded that Dorfmont's security clearance should be revoked. Dorfmont appealed to the Department of Defense Appeal Board, which found error and remanded the matter to the hearing examiner. The hearing examiner considered additional evidence and again concluded that the security clearance should be revoked. Dorfmont appealed again, and the Appeal Board affirmed the determination of the hearing examiner. Dorfmont then filed a lawsuit claiming that the hearing examiner and Appeal Board violated her rights to procedural and substantive due process. The District Court dismissed the complaint, holding that it did not have jurisdiction to review the revocation of the security clearance.

On appeal, the Ninth Circuit examined two Supreme Court cases in depth, Dep't of the Navy v. Egan, 484 U.S. 518 (1988) and Webster v. Doe, 486 U.S. 592 (1988), both of which held that federal courts could not review the merits of a decision to grant or revoke a security clearance because, in the area of national security, these decisions are the domain of the executive branch. Dorfmont, 913 F.2d at 1401. However, the Webster Court held that the court could review colorable constitutional claims brought in connection with security clearance revocation. Id. at 1402 (citing Webster, 486 U.S. at 603).

The <u>Dorfmont</u> Court concluded that the plaintiff's procedural due process claim was not a colorable constitutional claim because she had no right to the security clearance: "Where there is no right, no process is due under the Constitution." <u>Id.</u> at 1403.

> Dorfmont argues that she has a protected liberty interest in her ability to practice her chosen profession, and a protected property interest in her employment at Hughes. But Dorfmont has not been deprived of the right to earn a living. She has only been denied the ability to pursue employment requiring a Defense Department security clearance. The ability to pursue such employment stands on precisely the same footing as the security clearance itself. If there is no protected interest in a security clearance, there is no liberty interest in employment requiring such clearance.

<u>Id.</u> at 1403.

The facts of <u>Dorfmont</u> are distinguishable from the case before this Court in an important respect: <u>Dorfmont</u> and the cases cited therein all involve security clearances in the context of national defense, military and security matters, where the government inarguably has the strongest of compelling interests. And, notwithstanding the paramount importance of revoking a security clearance in a situation where the national security is at risk, Dorfmont nevertheless enjoyed extensive process, including two full hearings and two appeals, prior to filing her federal lawsuit.[2] This is strikingly different from the experience of Baillargeon, who

---

[2] The Court presumes that the procedures followed in the revocation of Dorfmont's security clearance are found in the Code of Federal Regulations, 32 CFR § 155. It may be that these procedures apply to Plaintiff herein as well, pursuant to 32 C.F.R. 155.2.

alleges that she had no notice or opportunity to be heard when her lower-level clearance was revoked.

The case of <u>Kartseva v. Dep't of State</u>, 37 F.3d 1524 (D.C. Cir. 1994) is more directly on point.  In that case, plaintiff Kartseva was a Russian translator working at a private company processing Soviet refugees for the State Department. This work was considered "unclassified but sensitive." <u>Id.</u> at 1526.  A system of background checks was put in place several months after Kartseva started her job, resulting in the State Department determining that Kartseva was ineligible to work on any State Department contract.   With no further explanation, the State Department advised Kartseva's employer to "act on" this, and Kartseva was fired.  <u>Id.</u> at 1526. Kartseva brought a multi-count complaint which was dismissed by the district court.

The Circuit Court revived Kartseva's Fifth Amendment due process claim against the State Department, stating, "[w]e think that Kartseva has alleged sufficient facts regarding violation of her liberty interest by State to survive a motion to dismiss." <u>Id.</u> at 1527.  The Court stated further that, in order to be actionable under the Due Process clause, "a government action that potentially constrains future employment opportunities must involve a tangible change in status." <u>Id.</u> at 1527.  In offering instructions to the district court, the Court wrote,

> The critical question on remand is whether State's disqualification has worked a change in Kartseva's status

under law, either by (a) automatically excluding her from a definite range of employment opportunities with State or other government agencies; or (b) broadly precluding her from continuing in her chosen career of a Russian translator.

Id. at 1527.  Either of these changes would implicate a constitutionally-protected liberty interest.  Id. at 1528.  In remarking on the vagueness of the action taken against Kartseva as well as the absence in the record of any explanation for it, the Court pointed out, in a footnote, that had she been denied a Department of Defense security clearance, "she would have been entitled to extensive procedural safeguards," including a hearing with the opportunity to cross-examine witnesses, as provided by 32 C.F.R. pt. 155, App. A.  Id. at 1528 n.16.

> In short, if State's insistence that Kartseva be removed from the Statistica contract with State proves to be an automatic disqualification from all Statistica contracts with State, from all State contracts of some predetermined type, from all State contracts, or from a predetermined class of contracts or jobs with agencies other than State, then it will have effected a change in her status sufficient to implicate a liberty interest, with attendant needs for due process protections.

Id. at 1529 (emphasis in original).

Under an alternate theory and line of cases, the Kartseva Court instructs the district court to consider whether Kartseva's disqualification by the State Department interferes with her constitutionally-protected right to follow a chosen trade or profession.  Id. at 1529.  Citing Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886 (1961), the Court states that,

-12-

"[u]nder this line of precedent, if Kartseva can show that State's action precludes her from pursuing her profession as a Russian language translator, she will have identified a cognizable liberty interest." Id. at 1529.

Like Kartseva, Baillargeon had a security clearance that afforded her access to sensitive, but unclassified, materials with no matters of national security at stake. Baillargeon, like Kartseva, was required to have security clearance in order to perform her job. Both women allege that their security clearances were revoked with no explanation, and both allege that they were unable to continue to work either for their private employer or in their chosen professional field without the security clearance. As with Kartseva, if Baillargeon can demonstrate that the revocation of her security clearance has excluded her from working in the field of asset forfeiture, then a constitutionally-protected liberty interest may be implicated by Baillargeon's claim in Count I. See also Stehney v. Perry, 101 F.3d 925, 936 (3rd Cir. 1996); Pindell v. Wilson-Mckee, 60 F. Supp. 2d 1244, 1257 (D. Wyo. 1999). In accordance with the analogous circumstances and reasoning set forth in Kartseva, this Court holds that Baillergeon's Fifth Amendment claim for deprivation of her right to pursue her profession must survive the DEA's Motion to Dismiss.

2.    Right to good name and reputation

This category of constitutional claim is related to the 'chosen profession' claim in that it usually involves the dissemination of stigmatizing information that prevents the claimant from obtaining work in his or her chosen field.  As Judge Almond explained in the R&R, the First Circuit has established a test for such claims in <u>Burton v. Town of Littleton</u>, 426 F.3d 9 (1st Cir. 2005) and <u>Wojcik v. Massachussetts State Lottery Comm'n</u>, 300 F.3d 92 (1st Cir. 2002), which requires, *inter alia*, the intentional publication of false statements about the claimant.  As Plaintiff herein does not make any allegations of this nature, this portion of Count I is properly dismissed.

3.    Jurisdictional issues

In addition to their substantive objections to Count I, Defendants also argue in their Motion to Dismiss that Count I must be dismissed because the United States' sovereign immunity strips this Court of jurisdiction.  In order to sue the United States government, or an agency of the government, a claimant must demonstrate that the government has waived its sovereign immunity. <u>FDIC v. Meyer</u>, 510 U.S. 471, 475 (1994).  Here, Plaintiff cites the Federal Tort Claims Act, specifically 28 U.S.C. § 2674, as the source of the government's immunity waiver, and the basis for this Court's subject matter jurisdiction.  This provision of the Federal Tort Claims Act (FTCA) makes the government liable for torts under

-14-

circumstances where a similarly-situated private citizen would be liable.[3]  Id. at 477.  Because Rhode Island would not impose liability on a private citizen for revoking a security clearance (or terminating non-contractual employment) without due process, no liability can be imposed on the United States under the FTCA.  See Roy v. Woonsocket Inst. for Sav., 525 A.2d 915, 917 (R.I. 1987). Moreover, the Supreme Court has held that constitutional tort claims may not be brought under the FTCA.  FDIC, 510 U.S. at 478 ("By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right.").  Consequently, the FTCA does not operate to waive the government's immunity to the Fifth Amendment claim brought by Plaintiff against the DEA; and this Court would have no jurisdiction to hear such a claim.

Plaintiff also cites the Administrative Procedures Act, 5 U.S.C. § 701 et seq. ("APA"), as the basis of this Court's jurisdiction over her claims.  The APA provides for judicial review of the final actions taken by federal agencies.  The Act also provides an explicit waiver of sovereign immunity at 5 U.S.C. § 702.  While most claims brought pursuant to the APA allege that a federal agency failed to follow its own rules and regulations,

---

[3] 28 U.S.C. § 2674 provides in part: "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

Section 706(2)(B) of the Act provides a mechanism for claims that an agency has violated the United States Constitution.   In pertinent part, this section provides:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  The reviewing court shall —
>
> . . . .
>
>    (2) hold unlawful and set aside agency action, findings, and conclusions found to be —
>
> . . . .
>
>    (B) contrary to constitutional right, power, privilege or immunity.

5 U.S.C. § 706; see South Dakota v. United States Dep't of Interior, 487 F.3d 548, 551 (8th Cir. 2007); Perry v. Delaney, 74 F. Supp. 2d 824, 834 (C.D. Ill. 1999); United States v. McAllister, 969 F. Supp. 1200, 1212 (D. Minn. 1997); Farmer v. Hawk, No. 94-cv-2274(GK), 1996 WL 525321, at *4 (D.D.C. Sept. 5, 1996).  However, the APA's waiver of sovereign immunity is limited to "relief other than money damages."  5 U.S.C. § 702.  Resort to the APA is further limited to cases where no other federal statute provides a remedy for the asserted claim.  Wright v. United States, 902 F. Supp. 486, 488 (S.D.N.Y. 1995).

The Court concludes that, for Count I, the APA is Plaintiff's sole avenue for a waiver of governmental immunity.  The APA also provides the basis for this Court's jurisdiction.  However,

Plaintiff may seek injunctive relief only against the DEA; her claims in Count I for compensatory and punitive damages must be dismissed. In summary, the portion of Plaintiff's claim that seeks injunctive relief from the DEA for the deprivation of her right to due process in connection with the revocation of her security clearance survives Defendants' Motion to Dismiss on both substantive and procedural grounds.

B.   Count III

This Count states a so-called <u>Bivens</u>[4] claim against Susan Ashcraft, DEA's Chief of Operations Management of the Asset Forfeiture Section, and two John Does, in their individual capacities, who Plaintiff alleges carried out the revocation of her security clearance without any process, thereby depriving her of her Fifth Amendment right. The Supreme Court has determined that the <u>Bivens</u> cause of action for damages may be extended to claims that federal officials, acting under color of federal law, have violated a claimant's Fifth Amendment rights. <u>Davis v. Passman</u>, 442 U.S. 228, 248 (1979). Nevertheless, the R&R called for the dismissal of Count III on the same grounds as Count I: that Plaintiff failed to identify a constitutionally-protected liberty or property interest. Because the Court has concluded in the analysis of Count I that Plaintiff has stated a potentially viable

---

[4] <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

-17-

constitutional claim for the deprivation of her right to follow her chosen profession, Count III, which outlines the same claim against different defendants, also survives on substantive grounds.  Since no claims based on vicarious liability are permitted under Bivens, Plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 129 S. Ct. at 1948.

1.   *In personam* jurisdiction

In addition to arguing that this Count be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6), Defendants assert that the Court does not have personal jurisdiction over Defendant Ashcraft, pursuant to Rule 12(b)(2).  Plaintiff argues that the Court may exercise specific personal jurisdiction over Ashcraft based solely on her actions' impact in Rhode Island in connection with the events that form the basis of this case.

When reviewing a motion to dismiss pursuant to Rule 12(b)(2), which alleges that the Court lacks personal jurisdiction over a party, the Court must accept as true properly-documented evidence presented by the plaintiff purporting to make a *prima facie* jurisdictional showing.  Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 45 (1st Cir. 2002). Generally speaking, the plaintiff cannot rest on the pleadings, but must produce additional evidence supporting "findings of all facts essential to personal jurisdiction."  Phillips v. Prairie Eye Ctr.,

-18-

530 F.3d 22, 26 (1st. Cir. 2008).  In this instance, in addition to relying on the factual allegations in Plaintiff's Complaint, the Court has reviewed the affidavit of Susan Ashcraft and the copy of the letter Ashcraft sent to FSA requesting Plaintiff's termination, both of which were attached to Defendants' memorandum in support of their motion to dismiss, and cited by Plaintiff in her memorandum in opposition.

Rhode Island's long-arm statute, R.I. Gen Laws § 9-5-33, extends the reach of the Court's personal jurisdiction as far as is constitutionally permissible.  Cassidy v. Lonquist Mgmt. Co., 920 A.2d 228, 232 (R.I. 2007).  To ascertain the Constitution's limits for the purposes of specific jurisdiction where a defendant is not present in the forum state, the First Circuit directs the Court to analyze three factors: 1) the claim must directly arise out of, or relate to, defendant's forum state activities; 2) the defendant's contacts with the forum must demonstrate a purposeful availment of the privilege of conducting business in the forum; and 3) the Court's exercise of jurisdiction must be reasonable.  Daynard, 290 F.3d at 60; see also N. Am. Catholic Educ. Programming Found., Inc., v. Cardinale, 567 F.3d 8 (1st Cir. 2009).  The First Circuit in Daynard quoted from the Supreme Court's landmark opinion in Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985), "[P]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are

-19-

subject to regulation and sanctions in the other State for the consequences of their activities." Daynard, 290 F.3d at 61.

Ashcraft works in Arlington, Virginia for the DEA. In her affidavit, she asserts that she has never been to Rhode Island. However, on February 4, 2005, she wrote a letter to FSA's Virginia office informing them that Plaintiff's access to DEA sensitive material was terminated and requesting that Plaintiff be removed from her position with the DEA.

Though Ashcraft's contacts with Rhode Island are minimal, the Court concludes that they are sufficient to establish specific personal jurisdiction. Clearly, Plaintiff's claim arises from and is directly related to Ashcraft's act of revoking Plaintiff's security clearance and ordering her termination. In order to conduct its activities in New England, the DEA entered into a contract with FSA which covered the New England Field Office in Warwick, Rhode Island. According to her affidavit, Ashcraft was in charge of administering the contract with FSA and responsible for managing DEA's Asset Forfeiture Program in Rhode Island and elsewhere. Ashcraft's letter demonstrates that she played a major and decisive role in personnel decisions here in Rhode Island. Ashcraft and the DEA purposefully availed themselves of the services of Baillargeon, a Rhode Island resident employed within the state, in order to perform their government duties. In Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972), the First

Circuit held that the element of intent strengthened the notion of purposeful availment; that is, an intentional act was accorded more weight in the jurisdictional analysis than an act that was merely voluntary.  In the present case, Ashcraft has demonstrated intent: she intended to conduct DEA 'business' in Rhode Island, and accomplished this goal by employing a Rhode Island resident to work at a field office within the forum state.

Finally, the Court determines that the exercise of jurisdiction is reasonable in that it comports with "fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945).  Plaintiff has chosen a convenient forum, which does not pose an excessive burden on Defendants, and which satisfies the judicial system's interest in obtaining an efficient and fair resolution of the controversy.

Consequently, this Count, for compensatory and injunctive relief against Ashcraft, is properly brought and should survive the Motion to Dismiss.  However, Plaintiff has failed to submit a sufficient evidentiary proffer, beyond the scant allegations in the Complaint, in order to support the Court's exercise of personal jurisdiction over the two John Does.  Consequently, Count III against the two John Does is dismissed.

V.    Conclusion

For the reasons stated above, the Court rules as follows:

Count I – Defendants' motion is denied as to injunctive relief only against Defendant DEA for the violation of Plaintiff's right to procedural due process in depriving her of the right to follow her chosen profession.   Defendants' motion is granted as to the portion of Count I that alleges that Plaintiff's constitutional right to her good name and reputation was violated.

Count II – Defendants' motion is granted.

Count III – Defendants' motion is denied as to Plaintiff's claim that DEA employee Susan Ashcraft, acting in her individual capacity, denied Plaintiff her right to procedural due process in depriving her of the right to follow her chosen profession.

Defendants' motion is granted as to the prong of Count III that alleges that Plaintiff's constitutional right to her good name and reputation was violated.

Defendants' motion is granted on Count III as to the two John Doe Defendants because the Court cannot exercise personal jurisdiction over them.

Count IV – Defendants' motion is granted.

Count V – Defendants' motion is granted.

Count VI – Defendants' motion is granted.

Count VII – Defendants' motion is granted.

No judgments shall enter in this case until all claims are resolved.

It is so ordered.

_____

William E. Smith
United States District Judge
Date: 7/23/09